[Crim. No. 37. Second Appellate District.—June 2, 1906.]

## In re Application of WILLIAM BAXTER for Writ of Habeas Corpus.

HABEAS CORPUS—COMMITMENT BY "CITY RECORDER."—A defendant, convicted in 1906 of a misdemeanor "in the recorder's court of the city of San Bernardino," and committed by the municipal judge as "city recorder" to the sheriff of the county, is held under authority of law, and will not be discharged on *habeas corpus*.

ID.—CONSTRUCTION OF SAN BERNARDINO CHARTER—"POLICE COURT" —JUDGE AD INTERIM—"RECORDER"—SYNONYMOUS TERMS.—The charter of the city of San Bernardino (Stats. 1905, p. 940) is to be construed not as continuing in existence the "recorder's court" previously existing under the municipal incorporation act of 1893; but simply as designating the "recorder" or "police judge" in office when the charter took effect as judge *ad interim* of the "police court" therein provided for, until May, 1907. But during such interval the terms "recorder" and "police judge" are used in section 13 of the charter as synonymous terms; and the judge of the

police court may with equal propriety be called "recorder" or "police judge," and the court either the "recorder's court" or the "police court."

APPLICATION for writ of *habeas corpus* to sheriff of San Bernardino County, holding under commitment of recorder's court of the city of San Bernardino. W. L. Vestal, City Recorder.

The facts are stated in the opinion of the court, and in the opinion of Benjamin F. Bledsoe, judge of the superior court, therein referred to.

Henry W. Nisbet, for Petitioner.

Ralph E. Swing, for Respondent.

SMITH, J.—The petitioner is held in custody by the sheriff of San Bernardino county, under a warrant of commitment issued under a judgment for misdemeanor in a case lately pending against him, entitled "In the Recorder's Court of the City of San Bernardino," etc., and signed by W. L. Vestal, "City Recorder."

A similar application, and upon the same grounds, was made to Judge Bledsoe of the superior court of San Bernardino county, by whom the writ was discharged and the prisoner remanded. The facts in the case, with the questions involved and the provisions of the charter and statutory provisions and authorities bearing upon the case are fully stated in the opinion of the judge, which is appended, and to which reference is made for a more specific statement of the case.

We concur in the conclusion reached in the opinion referred to and in much of the reasoning. But we are of the opinion that the charter is to be construed, not as continuing in existence the recorder's court previously existing, but as simply designating the "recorder" or "police judge" in office when the charter took effect as judge *ad interim* of the police court provided for in section 95 et seq. It follows that upon the death of the incumbent there was a vacancy in the office of judge of the police court. This vacancy might have been filled by the mayor under the provisions of section 91 of the act, but the officer thus appointed could not have held "be-

yond the next general municipal election"; at which time, it is expressly provided, "an election shall be held for that office so vacated to fill the unexpired term." Under this provision it was required by the law that at the first "general municipal election"—which was held on the second Monday of April, 1905—a judge of the police court should be elected; and such an election was in fact held, to which no objection can be urged, except that the officer elected as judge of the police court was called "recorder," instead of "police judge." But this, we think, was immaterial. The proposed judge of the police court, *ad interim*, is designated in section 13 of the act by both terms; and it seems to be clear, with reference to the interval of time between the adoption of the charter and the second Monday of May, 1907, that the two terms are used in the charter as synonymous. The judge of the police court during this interval, therefore, may, with equal propriety, be called "recorder" or "police judge," and the court either the "recorder's court" or the "police court."

It follows that the prisoner must be remanded to the custody of the sheriff; and it is so ordered and the writ is dismissed.

Allen, J., and Gray, P. J., concurred.

The following is the opinion of Judge Bledsoe, referred to in the foregoing opinion:

"The petitioner herein alleges that he is in the custody of the sheriff, under a commitment issued by W. L. Vestal, as city recorder of the city of San Bernardino; but that such detention is illegal, in that there is no recorder's court in the city of San Bernardino, and that consequently he is imprisoned without authority of law. The sole question in the case is as to the existence or nonexistence of any municipal court in the city of San Bernardino. If there is such a court, and it is a recorder's court, duly constituted, then the judgment of W. L. Vestal, who is the *de facto* judge thereof, is a valid and subsisting judgment and petitioner is not entitled to discharge.

"Petitioner's point is that the city, under its charter (Stats. 1905, p. 940), and under prior decisions of the supreme court (*People* v. *Tort*, 85 Cal. 333, [24 Pac. 603], and decisions following that) could not provide for any court except a 'police

court,' as permitted in section 8½, article XI of the constitution. Prior to the enactment of that act in 1896, it was held that the cities by freeholders' charters could not establish any municipal court, such power being granted to the legislature alone.

"The court will take judicial knowledge that San Bernardino, prior to the adoption of its charter, was acting under the municipal incorporation act of 1883, providing for the government of cities of the fifth class; that under such act elections for officers, including a recorder, were held in 1903. It is also apparent from the city charter above referred to that it was the intention of the framers thereof that all persons then in office, and to which they had been elected at the last municipal election, should hold their full term as prescribed by said act, to wit, until 1907. Pursuant to such intention, it is provided that a city election should be held in 1905, but that only certain officers, not including those who were to hold over, should be elected. It was specifically provided in section 13 that certain officers, including a recorder, 'shall also continue to hold office and act as such under the charter, until said second Monday of May, 1907.' Of course as long as the recorder acted 'as such,' he would constitute the recorder's court.

"By section 14 it is provided that in April, 1907, and regularly thereafter, a police judge, with certain other officers mentioned, should be elected. The police judge was to act *ex officio* as city treasurer.

"By section 75 it was provided that until the second Monday in May, 1907, the duties of the marshal, treasurer and recorder shall be those prescribed for marshal, treasurer and recorder, respectively, by chapter VI of the aforesaid act of the legislature, enacted in 1883, which chapter refers to cities of the fifth class.

"In sections 223 it was provided that 'all laws, ordinances and resolutions relating to the city of San Bernardino, now in force and not inconsistent to this charter, shall be and remain in force after this charter takes effect, until repealed or changed by the proper authority.' The effect of this provision would be to keep the law (Municipal Incorporation Act) in force until repealed or changed by proper authority (to wit, this charter).

"Section 224 provides that 'in all matters pertaining to municipal affairs, concerning which provision is not made in the charter, the general laws of the state, in force at the time, shall be in force in the city, so far as the same may be applicable to the class of cities to which this city may belong.'

"By the provisions of the general law, approved March 2, 1883 (Stats. 1883, p. 24), the class to which a city belongs or may belong, in the absence of a special enumeration, is determined by a reference to the last federal census; of this the court takes judicial knowledge, and from the same it appears that the city of San Bernardino at the present time belongs, and at the time of the adoption of such charter belonged, to the fifth class.

"As I read these provisions, it is apparent therefrom that the framers of the charter intended to constitute the recorder's court, precisely as the same existed prior to the adoption of the charter, as the municipal court of the city until the election of the police judge, which is not to occur until May, 1907. It is true, article 5 of the charter does in express terms provide that the judicial power of the city shall be vested in a police court; but it also provides immediately thereafter that such court is to consist of one police judge. There being no police judge provided for, until the end of the recorder's present term, there is no police court until then. The sole question remaining to be determined is whether or not, under the power granted the freeholders by the constitution, they could establish and constitute a recorder's court as the municipal court of the city. I am constrained to believe that the freeholders have such power.

"Petitioner's point would seem to be that because the term 'police court' was used in the amendment to the constitution, that the city could only establish a police court, eo nomine.

"To hold this would be to grasp at the form and disregard the substance; it would be to hold, in effect, that the city could establish any court and give it any jurisdiction it pleased, so long as it was called a 'police court.' This, I am satisfied, was not the intention; but, on the contrary, I think it stands without question that the intention was to enable the city to establish the usual and necessary municipal court, having merely a municipal jurisdiction, and belonging to the class of courts universally known and recognized, on account of their

extremely limited jurisdiction, as 'police courts.' The term 'police court' is not defined in the constitution and we must therefore look at the accepted definitions of the term to be found elsewhere. The Century Dictionary defines a police court as a court for the trial of offenders brought upon charges preferred by the police. Anderson's Law Dictionary, *sub. nom.* police court, defines it as 'an inferior court (in America) having a jurisdiction wholly or chiefly criminal in nature and very limited in extent; usually discharges merely functions of a justice of the peace, but has power to try some minor offenses. A limited civil jurisdiction is sometimes also conferred upon it.'

"The jurisdiction of the recorder's court, as established by the charter, being of course the same jurisdiction granted to it by the legislature (Municipal Incorporation Act, sec. 866), falls clearly within these limits.

"Pursuant to authority given by the constitution the legislature has at various times provided for so-called 'police courts,' viz.: Sections 229, 390, 560 and 690 of the aforesaid Municipal Incorporation Act, which provided for such courts for the first four classes of cities, respectively. A similar provision was made in the general law, Political Code, section 4424 et seq. Some of these courts (sec. 560, *supra*) were made courts of record; the others were not. I can discover no difference in the jurisdiction granted to them and that granted by recorders' courts provided for cities of the fifth and sixth classes by sections 806 and 882 of said Municipal Incorporation Act. It would seem probable that the framers of section 8½, the aforesaid amendment to the constitution, in using the term 'police court' had in mind such a 'police court' with the jurisdiction conferred as had been theretofore established in this state by the legislature, and which courts so established, while differing slightly, had certain inherent characteristics as to jurisdiction and situation.

"Anderson's Law Dictionary, in defining the word 'recorder,' says: 'He is a judicial officer, in many cities, whose jurisdiction is chiefly confined to the trial of criminal prosecutions'; thus showing that the jurisdiction of this court, which is the essential characteristic and substantial feature of any court, is the same as that of the police court. This is further shown by the decision *In re Carillo,* 66 Cal. 3, [4 Pac.

3 Cal. App.—46

695], where our supreme court, holding that a mayor might act as a police justice, say: 'The mayor of the city is, therefore, by the charter, *ex officio* police justice, and authorized to hold a police court for the city; for the term "police court" as used in the Penal Code, includes police judges' courts, *police courts,* and all courts held by *mayors or recorders,* in incorporated cities or towns.' (Pen. Code, sec. 1461.) We have here the express declaration of the supreme court, paraphrasing the language of the Penal Code, that a recorder's court is the substantial equivalent of a police court. So, in *Prince* v. *Fresno,* 88 Cal. 407, [26 Pac. 606], the supreme court, at page 412, in discussing the power of the recorder of the city of Fresno, used that term interchangeably with that of police judge. So in *Uridias* v. *Morrill,* 22 Cal. 473, on page 479, the supreme court say, of the use of the phrase 'municipal courts' as used in the constitution: 'The term "municipal courts" has a legal meaning and signification, and clearly includes mayors' and recorders' courts, as those were well known and universally recognized as being of that character.' *People* v. *Provines,* 34 Cal. 520, is to the same effect. It was held in *Mathie* v. *McIntosh,* 40 Wis. 120, that the 'police court' of a certain city was a 'municipal court' within the meaning of the constitution.

"For the foregoing reasons, I am led to believe that it was intended by the framers of the constitutional amendment to permit cities framing charters to provide for the establishment of an inferior court, which should correspond in substance, jurisdiction and standing with ordinary police courts; that the term 'police courts' was used in said amendment as merely descriptive of the court which might be established in any city, and that there was no intention, to be gathered from the instrument itself or elsewhere, that a city was to be limited to the establishment of a police court, *under that name only.*

"It is ordered that the writ be discharged and the prisoner remanded.

<div align="center">

"BENJAMIN F. BLEDSOE,

"Judge of the Superior Court.