[Civ. No. 6209. First Appellate District, Division One.—December 13, 1928.]

RICHARD F. ROBERTSON, Appellant, v. ARTHUR B. LANGFORD, as County Auditor, etc., Respondent.

George W. Waldorf and Jones & Boalt for Appellant.

Fred L. Thomas, District Attorney, and John P. Fitzgerald, Chief Deputy District Attorney, for Respondent.

PARKER, J., *pro tem.*—This is an appeal from an order and judgment of the superior court of the state of California in and for the county of Santa Clara, denying plaintiff's prayer for a writ of mandate commanding defendant as County Auditor to draw his warrant for the salary of plaintiff as justice of the peace of the city of San Jose. A statement of the case follows:

Pursuant to the notice of election of officers given by the proper authorities of Santa Clara County the appellant, Richard F. Robertson, became a candidate at both the primary and general elections held in the year 1926 for the office of justice of the peace of the city of San Jose. At the general election appellant, receiving the highest number of votes cast, was declared elected to said office by the board of supervisors of said county of Santa Clara, and a certificate of election to said office was issued to appellant.

Thereafter appellant duly qualified as such official, giving the necessary bond, properly approved, taking the requisite oath, and filing and recording said oath and bond as required by law. Respondent does not question either the validity of plaintiff's election or his qualification to hold the office of justice of the peace of the city of San Jose if said office has a legal existence, but maintains that at the time of said election and at all times subsequent thereto said office of justice of the peace of the city of San Jose did not legally exist, for the reason that the charter of the city of San Jose makes full provision for a municipal court, clothed with all the powers and endowed with all the jurisdiction of justice of the peace, and that, therefore, under the constitution of the state there is no room for any other inferior court. It is the further contention of respondent Auditor that, assuming the existence of said office and the right of appellant to receive salary, the liability to pay said salary is with the city of San Jose and is not a valid obligation of the county of Santa Clara.

The city of San Jose is within the territorial limits of Santa Clara County; said city is the county seat of Santa Clara County. It may be added that no question is presented concerning the salary or the amount thereof. It is conceded that the salary of the office, if such office exists, is two thousand four hundred dollars per annum, the city of San Jose being a city of the second and three-quarters class.

The constitution of the state of California provides (art. VI, sec. 1):

"The judicial power of the state shall be vested in the Senate, sitting as a court of impeachment, in a supreme court, district courts of appeal, superior courts, such municipal courts as may be established in any city or city and county, and such inferior courts as the legislature may establish in any incorporated city or town, township, county or city and county." (Art. VI, sec. 11.) "The legislature shall determine the number of each of the inferior courts in incorporated cities or towns and in townships, counties or cities and counties according to the population thereof, and the number of judges or justices thereof, and shall fix by law the powers, duties and responsibilities of each of said courts and of the judges or justices there." (Remainder of section omitted.)

Acting under the powers thus limited the legislature enacted section 103 of the Code of Civil Procedure, which reads in part as follows, deleted to illustrate its application to the instant case: "In every city of second and three-fourths class there must be one justice of the peace, to be elected in like manner by the electors of such cities or towns respectively; and such justices of the peace of cities shall have the same jurisdiction, civil and criminal, as justices of the peace of townships and township justices' courts. Said justices of the peace and justices' courts shall also have jurisdiction of all proceedings for the violation of any ordinance of any city in which courts are established, both civil and criminal, and of all actions for the collection of any license required by any ordinance of any such city, and generally exercise all powers, duties and jurisdiction, civil and criminal, of police judges, judges of police courts, recorders' courts or mayor's courts, within said city."

If this were the entire law upon the subject there would be little difficulty in determining the present issue; in fact, the present issue would never have arisen. However, the constitution of this state recognized the wisdom of local government in cities of certain population. By section 8 of article XI provision was made for local charters and the mode of framing and adopting the same. Section 8½ of article XI sets forth what such charters may contain. To obtain a clearer understanding of the provisions of section 8½ of article XI we will first quote the section as it stood in 1911, being the same as the previous enactment of 1896. In 1911 the section, as far as applicable, read: "It shall be competent, in all charters framed under the authority given by section 8, article eleven, of this constitution to provide, in addition to those provisions allowable by this constitution and by the laws of the state, as follows: 1. For the constitution, regulation, government and jurisdiction of police courts, and for the manner in which, the times at which, and the terms for which the judges of such courts shall be elected or appointed, and for the qualifications and compensation of said judges and of their clerks and attaches."

In *Ex parte Dolan*, 128 Cal. 460 [60 Pac. 1094], the supreme court construed this constitutional provision to mean that the police court created under the provisions of a city charter could not be given exclusive jurisdiction of crimes and misdemeanors cognizable by such a tribunal.

The court says: "Under the power given by the constitutional provision the charter may fix the jurisdiction of the police courts, but no authority is conferred upon the charter by the constitutional provision whereby it may oust any other court of jurisdiction it already had." This case was decided in 1900.

In 1907, while the constitutional provision remained as above cited, the case of *Graham* v. *Mayor of Fresno* came before the supreme court, and the opinion is found in 151 Cal., at page 465 [91 Pac. 147]. In this case we meet practically the same question as is presented in the instant case. The Graham case involved the application of section 103 of the Code of Civil Procedure to the city of Fresno. Concretely the issue presented was whether the constitutional provision authorizing cities to provide by charter for police courts limited the scope or effect of section 103 of the Code of Civil Procedure, as far as applied to a city which had, pursuant to constitutional authority, provided by charter for the creation and organization of a police court. The court reaches a conclusion expressed as follows: "We cannot find in subdivision 1 of section 8½ of article XI any intention to interfere with the power of the legislature in the matter of provision for justices of the peace for cities and towns.

"That subdivision is limited in terms to 'police courts,' and there is no mention whatever therein of justices of the peace or justices courts. The term 'police court' ordinarily refers to an inferior municipal court with a limited jurisdiction in criminal cases only, a court with power to try certain misdemeanor cases arising from the violation of state law or municipal ordinance, and with the power to conduct preliminary examinations in cases of felony and certain misdemeanors, and to hold defendants to answer for trial for the same, and does not include the justices courts established by our law.

"The term should probably be here construed to also include such inferior courts as may properly be held to be purely municipal, though given by the state certain jurisdiction in state as distinguished from municipal matters, courts coming within the class specified in the constitution as 'such inferior courts as the legislature may establish in any incorporated city or town or city and county,' such as a city recorder's court or a mayor's court.' But the city

justice of the peace provided for by section 103 of the Code of Civil Procedure does not come within this category. Justices of the peace are part of the constitutional judicial system of the state, having concurrent jurisdiction with superior courts in certain matters expressly given by the constitution (art. VI, sec. 11), and also having such jurisdiction in civil and criminal cases as is given by the general laws of the state to all justices of the peace. In this regard there is no distinction whatever between township and city justices. A city justice is simply part of this general state system, elected for a certain subdivision thereof. The constitution in terms provides that the legislature shall determine the number of such justices of the peace to be elected in townships, incorporated cities and towns, or cities and counties, and shall fix by law the powers, duties and responsibilities of such office (art. VI, sec. 11). In view of the explicit provisions of the constitution as to justices of the peace for cities and towns as well as townships and cities and counties, and the decisions of this court in regard thereto, it is inconceivable that the amendment'' (referring to the then existing subdivision 1 of section 8½, article XI, state constitution) ''limited in terms to police courts, was intended to trench in the slightest degree upon the power of the legislature to provide for justices courts in cities and towns as a part of the general state system of justices' courts, and we cannot give it any such effect.''

In 1914 the constitution was amended, and paragraph 1, section 8½, article XI, was amended to read as follows: ''For the constitution, regulation, government and jurisdiction of police courts, and for the manner in which, the times at which and the terms for which judges of such courts shall be elected or appointed, and for the qualifications and compensation of such judges and of their clerks and attaches; and for the establishment, constitution, regulation, government and jurisdiction of municipal courts, with such civil and criminal jurisdiction as may by law be conferred upon inferior courts; and for the manner in which, the times at which and the terms for which the judges of such courts shall be elected or appointed, and for the qualifications and compensation of said judges and of their clerks and attaches; provided such municipal courts shall never

be deprived of the jurisdiction given inferior courts created by general law. In any city or city and county, when such municipal court has been established, there shall be no other court inferior to the superior court; and pending actions, trials and all pending business of inferior courts within the territory of such city or city and county, upon the establishment of any such municipal court, shall be and become pending in such municipal court, and all records of such inferior courts shall thereupon be and become the records of such municipal court.''

The charter of the city of San Jose, as adopted in the year 1915 and approved by the legislature of the state of California in said year (Stats. 1915, p. 1897), provides as follows:

''There is hereby constituted a police court in and for the city of San Jose consisting of one police judge. Said police court and police judge shall have all of the powers, authority and jurisdiction, both civil and criminal, that are now or may hereafter be conferred by law upon justices of the peace in California, and in addition thereto said police court and police judge shall have exclusive jurisdiction of all proceedings for the violation of any ordinance of the city of San Jose.

''In all cases in which the police judge is a party or in which he is disqualified or unable to act, any justice of the peace of Santa Clara county may, at the request of the president of the council or of said police judge, act in his place or stead.''

The respondent herein concedes the force and effect of the cited case of *Graham* v. *Mayor of Fresno, supra,* as applying only to the constitutional provision as it read at the time of the decision. It is contended that under the present reading of the constitution the Graham case has not the slightest bearing upon the question under consideration.

Prior to 1911 the judicial power of the state was vested in the Senate, in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature might establish in any incorporated city or town or city and county (art. VI, sec. 1, Const.). In that year the constitution was amended to read: ''The judicial power of the state shall be vested in the senate, sitting as a court of

impeachment, in a supreme court, district courts of appeal, superior courts and such inferior courts as the legislature may establish in any incorporated city or town, township, county, or city and county'' (art. VI, sec. 1, Const.). The amendment to the section in 1924 simply added ''such municipal courts as may be established in any city or city and county.''

It will be thus noted that the framers of the constitution as it now stands intended to and did oust from the judicial scheme justices' courts as such, and with the exception of the courts named, with jurisdiction therein fixed, left to the legislature complete freedom in the establishment and constitution of all other inferior courts. It seems clear, whatever may have been the view of the courts prior to 1911, that since that date the justice's court as such lost any peculiar identity it may theretofore have had as a constitutional tribunal, and became merged within the general term of inferior courts as the legislature might see fit to establish.

It was contended, after the amendment of 1911, that the office of justice of the peace was abolished. This contention was made in a proceeding entitled *"In the Matter of Application of J. A. Woods for a Writ of Habeas Corpus,"* reported in 161 Cal. 238 [118 Pac. 792], (1911). The opinion of the court says: ''The recent amendment of sections 1, 11, 15, of article VI of the Constitution does not abolish the justices courts and other inferior courts which had been previously established by acts of the legislature. They remain in existence with the jurisdiction vested in them by the acts creating them until the legislature shall, *in the exercise of the power given by the section as amended, otherwise provide.*''

Later, in *People* v. *Creeks*, 170 Cal. 368 [149 Pac. 821], the court adhered to the views expressed in the Woods case.

Section 11 of article VI was amended in 1911 to the same effect, namely, by the omission of all reference to justices' courts or justices of the peace as such. Likewise section 15 of article VI carried on in its amendment the scheme and plan of dropping justices' courts and justices of the peace from express constitutional classification and authority.

With these amendments before us we conclude that since 1911 the justice's court, whether in cities or cities and

counties, townships, or counties, has existed subject to the will of the legislature, and that the power of the legislature to retain that court called justice's court, or to provide other inferior courts, either supplementary to or supplanting the justice's court, is unlimited except in one particular. And that particular is that where the power of the legislature is constitutionally limited with regard to the establishment or organization of any inferior court it is likewise so limited with regard to justices' courts. In other words, we find the organic law providing specifically for courts of general jurisdiction and establishing the jurisdiction of the said courts and the qualifications of the judges thereof, and the terms, limiting the power of the legislature over such courts. The same organic law then leaves with the legislature the power to provide the minor tribunals to cover jurisdiction not therein fully provided for.

Thus we approach article XI of the constitution. The subject of this article is cities, counties, and towns. Sections 8 and 8½ of article XI were and are framed and designed upon the principle of local self-government in so far, at least, as municipal affairs might be involved. Quoting Judge Angelotti, then Chief Justice, in *Ex parte Braun*, 141 Cal. 209 [74 Pac. 782] : "Whatever conflict may be found in the opinions of the Supreme Court as to the precise meaning of the term 'municipal affairs,' it has always been conceded by all the justices that the object of the constitutional provision was to secure to the municipality that had under its provisions adopted a charter for its own government, the maintenance of its charter provisions in municipal matters, and to deprive the legislature of the power, by laws general in form, to interfere in the government and management of the municipality."

Section 8 of article XI provides in detail for the framing of city charters and the approval thereof. Section 8½ then sets forth what such charters may provide *in addition to the provisions allowed by the constitution and by the laws of the state,* the italicized clause being synonymous with the clause "any other or general provision of law to the contrary notwithstanding."

Section 8½ has been quoted in full hereinbefore, and we now return to further analysis thereof with respect both to its present form and its history and the construction placed

upon it in its prior form as indicative of the construction it should now receive.

As we have seen, section 8½, as it formerly stood, permitted the constitution, regulation, government, and jurisdiction of the police courts, with nothing further defining the term or specifying or in anywise pointing out the character of such a tribunal. Many cities under the provisions attempted to vest in this court an exclusive local jurisdiction, and in some instances attempted to clothe this court with the civil jurisdiction of inferior courts. Such attempts met with the disapproval of the supreme court, as in the cases cited, *supra*. For instance, in *Ex parte Dolan*, 128 Cal. 460 [60 Pac. 1094], the holding to the effect that exclusive jurisdiction of misdemeanors was concurrently in the police court and the justice's court. Also, *Graham* v. *Mayor of Fresno*, *supra*, holding that the police court under the charter was purely local and in nowise a substitute for or embracing the jurisdiction of the justice's court, this latter case announcing that pursuant to constitutional provisions the justice's court was an essential and integral part of the judicial plan of the state. Then in 1911, as noted, the severing and disjoinder of justices' courts from the judicial scheme as outlined in the constitution.

We assume as a matter of construction that when the organic law was amended in 1914 the framers had in mind all of these decisions and were mindful of the constitutional change of 1911. In the construction of a statute it is assumed that the legislature knew the existing laws, and that it had knowledge of existing judicial decisions, and enacted statutes in the light of such decisions as have a direct bearing upon them (23 Cal. Jur. 783, and cases therein cited). It is settled that the court, in order to determine correctly the construction to be placed upon constitutional provisions, has undoubted power to take into consideration the course of legislation and judicial decisions prior to the adoption of such provisions and the evils intended to be remedied. The provisions must be considered with reference to their history, the prior state of the law, the conditions existing prior to their adoption, and the good to be gained (*Mundell* v. *Lyons*, 182 Cal. 292 [187 Pac. 950]; *Matter of Russell*, 163 Cal. 672 [Ann. Cas. 1914A, 152, 126 Pac. 875]; 5 Cal. Jur. 592).

■ Having these aids to construction before us, we note that in 1914 the constitution was amended as indicated hereinbefore (sec. 8½, art. XI), and remains to date as then amended, although changed in other particulars and re-adopted in 1918. The amendment gave to cities, in addition to the power theretofore granted, the right to provide for the constitution, regulation, government, jurisdiction of municipal courts and judges thereof; and to make more clear the intent it was specifically provided that such municipal courts shall *never be deprived of the jurisdiction given inferior courts created by law*. The language thus italicized might have been more fortunately chosen. It would be unwarranted to conclude that it was intended to mean that no subsequent enactment or change in the organic law could effect that object. It is a fair and reasonable construction to interpret the meaning to be that no such municipal court shall ever be constituted or established possessing less jurisdiction than that given inferior courts under the general law; in other words, that such courts should absorb all of the jurisdiction remaining without that of courts of record. However, this construction is not essential to this decision, but, if adopted, more clearly illustrates the intent of the framers of the constitutional provision.

Going further, the constitution then provides "In any city when such municipal court has been established there shall be no other court inferior to the superior court." This provision by its plain words demonstrates an intent to invest in the municipal court all of the jurisdiction possible to invest in an inferior court. The framers of the provision knew that no power could be conferred on a city to establish a court exercising jurisdiction coextensive with or trenching upon that of the superior court provided for in the constitution. And knowing this, the provision was adopted with an intent to definitely allocate all of the jurisdiction remaining to be vested in this inferior municipal court.

■ We conclude, therefore, that at the time of the adoption of the charter in 1915 the city of San Jose was authorized to provide in that charter for such a court as would entirely suspend and render unnecessary the provisions of section 103 of the Code of Civil Procedure in so far as it might be made applicable to a city of that class operating under its own charter.

Appellant, merely for the purpose of argument, however, is ready to concede the correctness of this conclusion. But, he urges, granting the power in the city under its charter to establish such a court, nevertheless it has not exercised that power. Appellant urges that all that the city has done is to establish a police court such as was formerly permitted under the old provisions of the constitution, and such as referred to in the case of *Graham* v. *Mayor of Fresno, supra,* and that the municipal court permitted under the amendment has never been established.

This brings us to the city charter.

As hereinbefore outlined, the charter specifically provides:

"Article XI.—There is hereby constituted a police court in and for the city of San Jose, consisting of one police judge.

"Said police court and police judge shall have all the powers, authority and jurisdiction, both civil and criminal, that are now or may hereafter be conferred by law upon justices of the peace in California, and in addition thereto said police court and police judge shall have exclusive jurisdiction of all proceedings for the violation of any ordinance of the city of San Jose." (Stats. 1915, p. 1897.)

The said charter then provides that in case of disqualification, sickness or inability to act any justice of the peace of Santa Clara County may serve.

The jurisdiction of justices of the peace in California is set forth in the Code of Civil Procedure—sections 103, and 112, and many other sections scattered throughout the Code of Civil Procedure and Penal Code. We deem it unnecessary to cite each and every section of all of the codes having a bearing upon this question of the jurisdiction of a justice's court or justice of the peace. It will suffice to say that justices' courts have jurisdiction in all matters cognizable by inferior courts. By this it is not meant that this jurisdiction is inherent, because no jurisdiction attaches to such a tribunal unless especially conferred. But the legislature by statute, without enumerating each specific statute or code section, has conferred upon the justice's court a jurisdiction covering all matters not vested in the courts of record, and in some instances, pursuant to constitutional freedom, it has conferred a jurisdiction concurrent with the superior court.

Laws, whether statutory or by way of charter, may be enacted by reference (*Greene* v. *Town of Lakeport*, 74 Cal. App. 1 [239 Pac. 702]; 23 Cal. Jur., p. 685, sec. 75 and cases cited).

Therefore it will be at once noted that the charter did provide for a tribunal exactly filling that classed as a municipal court as provided in the amended constitution, section 8½, article XI.

The sole question remaining then has to deal with the name by which the court is designated, to wit, police court. Appellant's contention is that no matter what jurisdiction may be conferred, yet the name police court so distinguishes and characterizes the tribunal as to render abortive any attempt at enlargement of the jurisdiction which might have been vested in the old police court formerly provided for.

The argument is neither convincing nor persuasive. The character of a court is determined not by its name but by the nature of its jurisdiction and functions (*City of Colton* v. *Superior Court*, 84 Cal. App. 303 [257 Pac. 909]; *Ex parte Soto*, 88 Cal. 624 [26 Pac. 530]; *Ex parte Baxter*, 3 Cal. App. 720 [86 Pac. 998]). The language found on page 720 of 3 Cal. App. in the Baxter case is particularly applicable and is to the effect that to limit a court by name would be to grasp at form rather than substance.

We conclude that the designation of the city court as a police court is of no importance; that the character of the court is to be determined by the jurisdiction conferred. This is more apparent when we consider that when the charter conferred upon this court the jurisdiction it did, thus fulfilling the constitution's grant of power, then, under the plain terms of section 8½, article XI, another inferior court could not be maintained within the city.

We hold that section 8½, article XI, of the state constitution should be construed and is construed to give to cities coming within its scope the power to establish a court combining the jurisdiction of all inferior courts, and that the name given the court in this instance does not indicate a limitation as against the express terms of the charter. In other words, the constitution now gives to these cities the power and right to provide for themselves such municipal courts as they may determine to be necessary,

limited only to the jurisdiction of inferior courts. It does not confer power to establish a police court and then in addition thereto the municipal court referred to in section 8½ of article XI. Both cannot exist in the same city, and the determination of which is established follows from the jurisdiction which is conferred rather than the name applied.

Summing it up, the power conferred by the constitution permits the city to establish a municipal court with all the jurisdiction that may be conferred upon inferior courts. And this the city of San Jose has done.

By the further provisions of the constitution, when this has been done there shall be no other court inferior to the superior court. It is too plain for further diagram.

From what has been set forth herein it follows that plaintiff has no claim for salary by reason of his election to an office which does not exist, and therefore the defendant auditor was within his duties in refusing to issue to plaintiff the warrant sought.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 11, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 11, 1929.

Shenk, J., dissented.