[Civ. No. 3796. Third Appellate District.—March 14, 1929.]

CYRIL KENYON, Petitioner, v. FRED H. JOHNSON, as Auditor, etc., Respondent.

Nutter, Hancock & Rutherford for Petitioner.

Guard C. Darrah, District Attorney, and Tom H. Louttit, Assistant District Attorney, for Respondent.

PLUMMER, J.—This cause is before us upon the application of the above-named petitioner for a writ of mandate praying that the respondent, Fred H. Johnson, as Auditor of the County of San Joaquin, be commanded and directed to issue and deliver to the petitioner a warrant upon the county treasurer of the county of San Joaquin for the sum of three hundred dollars ($300) in full compensation due said petitioner for his salary as justice of the peace of Stockton township in the county of San Joaquin, for the month of February, 1929.

To this petition the respondent has filed a general demurrer. The record before us shows that Stockton township now is, and for a long time prior to the beginning of this action has been, a subdivision of the county of San Joaquin regularly organized, designated, and delineated as a part and parcel of the territorial township divisions of said county, and is now existing under the legislative and constitutional provisions of this state. The record also shows that Stockton township, as so organized, existing and delineated and circumscribed as a part of the territorial area of the county of San Joaquin, lies wholly within the territorial limits of the city of Stockton, a city regularly chartered under the provisions of section 8 of article XI of the constitution. The record further shows that the petitioner is the duly appointed, qualified, and acting justice of the peace of Stockton township, and was such during the entire period of the month of February, 1929, and that his salary was fixed by law in the sum of three hundred dollars per month, payable monthly, on the first day of each and every month, and that on the first day of March, 1929, the respondent, as auditor of the county of San Joaquin, declined and refused to issue a warrant to said petitioner as and for payment of his salary for the month of February, 1929. The basis of the auditor's refusal is that under the provisions of section 8½ of article XI of the constitution as now amended, there is no justice of the peace of Stockton township, as said township, as herein stated, lies wholly within the territorial limits of the city of Stockton. Is the auditor's refusal well founded? The answer to this question is to be found not in whether there is what is called a municipal court created by the charter of the city of Stockton, but whether, under the constitutional and general laws of the state, there exists such an entity as Stockton township, and such officer as a justice of the peace thereof.

From the very beginning of the history of California as a state there has existed such an entity or agency of government as townships. The constitution of 1849 specified that the legislature should establish a system of "county and town governments." This language appears in section 4 of article XI, and section 9 of the same article provides that each county, town, city, and incorporated village shall make provision, etc. And section 9 of article VI authorized the legislature to "determine the number of Justices to be

elected in each city and township of the State and fix their powers and duties.'' It will be noticed that the framers of the constitution of 1849 used the words ''town and township'' interchangeably, following, undoubtedly, the custom of many of the eastern states where townships consisting of only six miles square of territory are called ''towns,'' meaning, as commonly used, ''townships.'' The constitution of 1879 drops the word ''town'' and uses only the word ''township'' when a certain subdivision of counties is intended. Section 11 of article VI of that constitution, as originally adopted, reads: ''The legislature shall determine the number of Justices of the Peace to be elected in townships, incorporated cities and towns,'' etc. As amended in 1911 that section now reads: ''The legislature shall determine the number of each of the inferior courts in incorporated cities and towns, and in townships, counties and cities, and counties according to the population thereof.'' The specific name of the court or of the officer as justice of the peace is transmuted into the term ''inferior courts,'' but the legislative provision for a court for a township is maintained and continued operative. Section 4 of article XI, relative to the subject under discussion, reads: ''The legislature shall establish a system of county governments which shall be uniform throughout the State, and by general laws shall provide for township organizations,'' etc. While it would be permissible under the constitution to provide for a system of township government, the legislature has gone no further than to provide for the election of justices of the peace and constables as township officers. Section 103 of the Code of Civil Procedure provides that there shall be at least one justice's court in each township of the state, for which one justice of the peace shall be elected by the qualified voters of the township. This section further provides for the election of justices of the peace in the cities of the state, according to their classification, and that there shall be such officer in every city of the second and three-fourths class, which classification applies to the city of Stockton. In construing this section of the code, and section 8½ of article XI of the constitution, it would appear that the auditor has held the city of Stockton and the township of Stockton identical, and that as section 8½ of article XI of the constitution has been construed to eliminate that portion of section 103 of the

Code of Civil Procedure providing for the election of a justice of the peace in a city of the class to which Stockton belongs, there is no such officer as justice of the peace of the township of Stockton. The fallacy of this reasoning lies in the assumption that the city of Stockton and the township of Stockton are one and the same. As we have shown by the constitutional provisions to which we have referred, townships are segregated, separated, and delineated subdivisions of counties, for specific purposes. These subdivisions have no relation whatever to incorporated or chartered cities; they exist in and of themselves, to all intents and purposes as distinctly as though there were no cities whatsoever, and the subdivision or part of the governmental territory of the state of California known as Stockton township, in the county of San Joaquin, stands alone and upon its own basis, irrespective of the existence of the city of Stockton, of the classification referred to in section 103 of the Code of Civil Procedure. As stated in 38 Cyc. 599, the word "township" is used in two senses; "in one sense it is used to denote a territory six miles square surveyed and platted by the government surveyors, divided into thirty-six sections, while in another sense it is employed to describe a subdivision of the county, created by the state legislature and vested with certain powers of local government." As stated, in some of the states in this latter sense the word "township" as used is synonymous with the word "town," even though it refers to and describes only six miles square of territory, but as shown by the references to the constitution of this state, it is now referred to simply as a "township." The cases cited in the note which we have quoted from Cyc. illustrate the history and existence of the entity known as a township, separate and apart from incorporated and chartered cities. In 24 Cal. Jur. 607 we find the following in relation to townships: "A township is a subdivision of a county and, in many states, possesses certain powers of local government. Some courts construe the word 'township' as synonymous with 'towns,' but this view has never been adopted in California. Here 'township' is nothing more than a geographical subdivision of a county principally for the purpose of electing Justices of the Peace and constables." This court, in the case of *Platnauer* v. *Board of Supervisors*, 65 Cal. App. 666 [225 Pac. 12], has recognized the distinction of townships as separate identities from cities, although the

territorial limits of the two identities may be coincident. It was there held that the office of a justice of the peace of the city of Sacramento and a justice of the peace of the township of Sacramento were separate and distinct, even though the city of Sacramento and the township of Sacramento embraced the same territory.

Section 4015 of the Political Code likewise recognizes townships as distinct identities. That section reads: "The Board of Supervisors of each County, as public convenience may require, shall divide their respective counties into townships for the purpose of electing Justices of the Peace and Constables," etc. We do not find, nor has our attention been called to any legislative enactments eliminating the office of justice of the peace of townships. The only change that has been made with reference to the existence of the office is by the respective amendments to the constitution by which a township justice is now a legislative matter instead of a constitutional position.

▆▆ Only one further inquiry remains: Has section 8½ of article XI of the constitution, as amended, abolished the office of justice of the peace of Stockton township? An examination of that section discloses that, so far as the office of justice of the peace is concerned, it relates only, and can relate only, to that office, in so far as it affects a justice of the peace of a city organized and chartered under section 8 of article XI of the constitution. Subdivision 1 of section 8½ of article XI authorizes cities, in the adoption of charters, to provide for the constitution, regulation, government, and jurisdiction of police courts, etc.; likewise, for the establishment, constitution, regulation, government, and jurisdiction of municipal courts and judges thereof. And then, further, in the same subdivision, it is provided that "in any city, or any city and county, when such municipal court has been established, there shall be no other court inferior to the Superior Court," etc. No reference is made to justices' courts of townships, nor is there any language used in the section from which the inference could be drawn that there was any intent in the adoption of section 8½ of article XI, as now amended, to abolish townships, justices' courts, or justices' courts of townships. The reference and the power granted in the establishment of courts, whether called police courts or municipal courts under this section, is to

inferior courts existing within, as, and of city courts, not courts existing by virtue of townships created pursuant to the constitution and legislative enactments to which we have referred. The limitation in the constitution as amended, if at all, affects only that portion of section 103 of the Code of Civil Procedure which provides for the creation of justices of the peace in and for cities. In this behalf our attention has been called to the case of *Robertson* v. *Langford*, 95 Cal. App. 414 [273 Pac. 150]. An examination of the Robertson case discloses that it deals only with the office of justice of the peace of the city of San Jose. It does not purport to deal with the office of justice of the peace of San Jose township. It may be here stated that the Blue Book of the state of California sets forth the existence of two justices of the peace of San Jose township, and so far as the Robertson case is concerned, there is nothing said therein which in anywise tends to question the existence of said court. If it be admitted that upon the establishment of a court by the city of Stockton, under the provisions of section 8½ of article XI of the constitution, the office of justice of the peace for such city is eliminated, as would necessarily follow if the case of *Robertson* v. *Langford, supra,* is applicable, the conclusion that the office of justice of the peace of Stockton township is also abolished is unwarranted for the simple reason that the office of justice of the peace of Stockton township is an office of a distinct and separate identity from the city of Stockton. The case of *Robertson* v. *Langford,* and the authorities therein cited establish that the office of justice of the peace is not abolished. The constitutional provision, when given its widest latitude, only abolishes the office of justice of the peace of cities having adopted charters and established a court as provided for under section 8½ of article XI of the constitution. The municipal court referred to in section 8½ of article XI of the constitution is not the municipal court referred to and authorized to be established by the amendment to the constitution adopted in 1925, and relates only to courts created by city charters.

It necessarily follows from what we have said that the office of justice of the peace of Stockton township must be held to be a valid and subsisting office, and that the petitioner is the legally qualified and acting incumbent thereof and is entitled to the salary provided by law, payable

monthly, and that the auditor was unwarranted in refusing to draw and deliver to petitioner a warrant therefor. Respondent's demurrer is overruled.

The respondent is hereby ordered to draw and deliver a warrant in favor of the petitioner for the sum of three hundred dollars as and for his salary as justice of the peace of Stockton township, for the month of February, 1929, and a peremptory writ of mandate commanding him so to do is hereby granted.

Thompson (R. L.), J., and Finch, P. J., concurred.