[Crim. No. 3232. In Bank.—July 9, 1929.]

In the Matter of SHADOW LOVALL on Habeas Corpus.

Sydney C. Bennett for Petitioner.

Brobeck, Phleger & Harrison, Nutter, Hancock & Rutherford, A. P. Hayne, Guard C. Darrah, District Attorney, and Tom H. Louttit, Assistant District Attorney, for Respondent.

CURTIS, J.—Petitioner is confined in the county jail of the county of San Joaquin under and by virtue of a commitment issued out of the justice's court of the city of Stockton, in said county. The return to the writ of *habeas corpus* issued herein shows that petitioner was convicted of a misdemeanor and adjudged to pay a fine of five hundred dollars, and in default of the payment of such fine that he be imprisoned in the county jail of said county. No question is made as to the regularity of any of the proceedings in the action which resulted in the judgment against petitioner. The sole point made by petitioner for his

release from said imprisonment is that there is no such court as the justice's court of the city of Stockton and for that reason the commitment purporting to have been issued by the justice of the peace of said court is void, and furnishes no legal warrant for his imprisonment. In support of his contention petitioner relies upon the recent case of *Robertson* v. *Langford*, 95 Cal. App. 414 [273 Pac. 150]. In that case it was held that the police court of the city of San Jose, created under the charter of said city, possessed all of the powers of a municipal court, and was therefore in fact a municipal court, in the sense in which the term "municipal court" was used in section 8½ of article XI of the constitution of this state. This section of the constitution provides that upon the creation of a municipal court by a city under the terms of said section of the constitution "there shall be no other court inferior to the superior court." Accordingly it was held in the case involving the validity of the city justice's court of the city of San Jose that by the adoption of the charter creating a police court having all the powers and jurisdiction possessed by a municipal court, the justice's court in said city had been abolished.

The provision of the charter of the city of San Jose prescribing the jurisdiction of the police court of said city, which was held in *Robertson* v. *Langford, supra,* to be a municipal court, was as follows: "Said police court and police judge shall have all the powers, authority and jurisdiction, both civil and criminal, that are now or may hereafter be conferred by law upon justices of the peace in California, and in addition thereto, said police court and police judge shall have exclusive jurisdiction of all proceedings for the violation of any ordinance of the city of San Jose."

The provisions of the charter of the city of Stockton creating a police court for said city and prescribing its jurisdiction are found in article XXI of said charter. Section 1 of this article provides for the creation of a police court in said city of Stockton. Section 3 of said article was amended in 1927 [Stats. 1927, p. 2151], the original charter having been adopted in 1923 [Stats. 1923, p. 1371], and in its amended form, in so far as it may be necessary for the purposes of this proceeding, reads as follows: "Said police court shall have exclusive jurisdiction of all misdemeanors punishable by fine or by imprisonment or by both such fine and imprison-

ment committed within the corporate limits of the city. It shall also have exclusive jurisdiction of all actions for the recovery of any fines, penalties or forfeitures prescribed for the breach of any ordinance of the city, of all actions founded upon any obligation or liability created by any ordinance, and of all prosecutions for any violation of any ordinance. Said police court shall have jurisdiction in all civil cases, concurrently with the justices' courts of all actions and proceedings arising within the corporate limits of the city and which might be tried in such justices' court.'' The amendment of 1927 does not affect materially any question arising in this proceeding.

It will readily be seen by a comparison of the respective charter provisions of these two cities, vesting jurisdiction in the police courts created by their charters, that there is a marked difference in the jurisdiction conferred upon the police court of the city of San Jose and that conferred upon the police court of the city of Stockton. By the charter of the city of San Jose it is expressly provided that the police court of that city shall have "all powers, authority and jurisdiction, both civil and criminal, that are now or may hereafter be conferred by law upon justices of the peace,'' while in the charter of the city of Stockton the jurisdiction of the police court of that city is definitely and expressly limited and fixed in both civil and criminal proceedings to matters arising within the corporate limits of the city of Stockton. The difference in the jurisdiction of these two courts is just the difference between the jurisdiction of an ordinary justice's court and an inferior or police court, limited in its authority and powers to matters arising within the corporate limits of the municipality wherein it is situated. The criminal jurisdiction of justices' courts over certain public offenses such as petit larceny, assault and battery, breaches of the peace and other misdemeanors extends to all such offenses committed within the county in which said courts are established. (Pen. Code, sec. 1425.) In civil matters the justices' courts have jurisdiction of many actions arising without the city or township within which they are situated. These are enumerated in section 832 of the Code of Civil Procedure and need not be mentioned in detail. The basis of the decision in *Robertson* v. *Langford, supra,* was that by various acts of the legislature the justices' courts

have had conferred upon them jurisdiction covering all matters not vested in courts of record and that by the charter of the city of San Jose the police court of said city was vested with like jurisdiction. Therefore the court in that case held that said police court was in fact a municipal court, and under the constitutional provision above referred to the creation and establishment of such a court in the city of San Jose abolished all courts in said city inferior to the superior court. In the present proceeding, however, we have an entirely different state of facts. The police court of the city of Stockton has not been vested with the jurisdiction possessed by a justice's court, in that its powers are expressly restricted and limited to matters arising within the city. It could not, therefore, under the theory under which the case of *Robertson* v. *Langford* was decided, be held to be in any sense such a municipal court as is provided for by section 8½ of article XI of the constitution.

There are cases, both in this state and in other jurisdictions, which, in effect, hold that a police court or a recorder's court is a municipal court. (*Uridias* v. *Morrill,* 22 Cal. 474; *Mathie* v. *McIntosh,* 40 Wis. 120; *In re Baxter,* 3 Cal. App. 716 [86 Pac. 998].) ■ Generally speaking, this may be true, but we think when we come to examine section 8½ of article XI of the constitution of this state, by the terms of which cities of the state are given the power to establish either a police or a municipal court, that these cases are not applicable. Prior to 1914, by this section of the constitution, cities were given power in their charters to establish police courts only. By the amendment thereto, adopted in 1914, the power of cities in respect to the establishment of inferior courts was enlarged, and they were given authority to establish municipal courts as well as police courts. That portion of said section with which we are now concerned, after its amendment in 1914, and now, reads as follows:

"Sec. 8½. It shall be competent, in all charters framed under the authority given by section eight of this article, to provide, in addition to those provisions allowable by this Constitution and by the laws of the state as follows:

"1. For the constitution, regulation, government, and jurisdiction of police courts, and for the manner in which, the times at which, and the terms for which the judges of

such courts shall be elected or appointed, and for the qualifications and compensation of said judges and of their clerks and attaches; and for the establishment, constitution, regulation, government and jurisdiction of municipal courts and judges thereof, and such civil, criminal and magisterial jurisdiction as by law may be conferred upon inferior courts and judges thereof; and for the manner in which, the times at which and the terms for which the judges of such courts shall be elected or appointed, and for the qualifications and compensation of said judges and of their clerks and attaches; provided, such municipal courts shall never be deprived of the jurisdiction given inferior courts created by general law.

"In any city or any city and county, when such municipal court has been established, there shall be no other court inferior to the superior court; and pending actions, trials, and all pending business of inferior courts within the territory of such city or city and county, upon the establishment of any such municipal court, shall be and become pending in such municipal court, and all records of such inferior courts shall thereupon be and become the records of such municipal court."

It will thus be seen that this section of the constitution, after its amendment in 1914, expressly provides for the establishment of both a police court and a municipal court. It is inconceivable that the framers of the amendment of 1914, whereby municipal courts were for the first time expressly provided for, intended that the court for which they were then providing was nothing more nor less than a police court. If a police court is the same thing as a municipal court then the amendment of 1914 to said section 8½ was entirely unnecessary. We think the conclusion is inevitable that by the adoption of the amendment of 1914 it was the intention to provide for the establishment of two distinct classes of courts in the cities of the state, one a police court and the other a municipal court.

It is further apparent from the provisions of said section that the municipal court therein mentioned must be vested "with such civil, criminal and magisterial jurisdiction as by law may be conferred upon inferior courts and judges thereof," and that "such municipal courts shall never be deprived of the jurisdiction given inferior courts created by general law." No such requirement as the above is made

concerning police courts. There is nothing in this section of the constitution, nor in any other provision of the law, to our knowledge, which would prevent the establishment of a police court with jurisdiction limited solely to such proceedings, civil and criminal, as might arise under municipal ordinances of the city in· which said police court may be situated. For these reasons, as well as others that might be mentioned, we conclude that the authorities above cited have no application to the police and municipal courts provided for in said section 8½ of article XI of the constitution. It is also perfectly clear from the terms of said section that the police court established by the charter of the city of Stockton is not a municipal court, as that court is provided for in said section. We have above referred to the limited scope of its jurisdic· tion. It is not vested ''with such civil, criminal and magisterial jurisdiction as by law may be conferred upon inferior courts.'' On the other hand, it is deprived of much of the jurisdiction given inferior courts created by general law, as we have shown in the first part of this opinion. It cannot in any sense be considered or held to be a municipal court.

The provisions of section 8½ of article XI of the constitution declaring, in the event a municipal court is established in any city by its charter, that there shall be no other inferior court in said city, have therefore no application to the city of Stockton nor to the justice's court provided for such city by section 103 of the Code of Civil Procedure. The justice's court in said city has not been abolished, or in any manner affected by the adoption by said city of its charter, nor by the amendment thereof enacted in 1927.

It follows, therefore, that the commitment issued out of said court under which petitioner is now held as a prisoner in the county jail of the county of San Joaquin is legal and valid and that petitioner is not unlawfully restrained of his liberty. This conclusion renders it unnecessary for us to consider other arguments made by the respondent in answer to petitioner's contention that the justice's court of said city has no legal existence. The writ is discharged.

The petitioner is remanded to the custody of the sheriff of said county of San Joaquin.

Shenk, J., Richards, J., Seawell, J., Preston, J., Waste, C. J., and Langdon, J., concurred.