[Civ. No. 3327. Third Appellate District.—June 6, 1930.]

RUBY F. McCLUNG, Appellant, v. F. H. JOHNSON, as County Auditor, etc., Respondent.

Gumpert & Mazzera for Appellant.

Guard C. Darrah, District Attorney, and T. S. Louttit, Deputy District Attorney, for Respondent.

PLUMMER, J.—The appellant in this action was, during all the times mentioned herein, the duly appointed, qualified and acting clerk of the Justice's Court of the City of Stockton. The city of Stockton is a municipal corporation of 2¾ class. It is incorporated under a freeholders' charter, duly ratified and approved by the legislature. Under the charter of the city of Stockton there was created a police court in and for said city. This court is presided over by a police judge, and also has a duly appointed, qualified and acting clerk.

The section of the Code of Civil Procedure under which the appellant was appointed and qualified as the clerk of the Justice's Court of the City of Stockton provides a salary of $1500 per year. On or about the first day of February, 1927, the appellant applied to the county auditor of the county of San Joaquin for a warrant in her favor in the sum of $125, payable out of the county treasury of the county of San Joaquin, as and for her salary for the month of January, 1927. The respondent, as the county auditor of said county, refused to issue or deliver to the appellant a warrant in said sum, or any sum, as and for her salary as clerk of said court. Upon the refusal of the auditor to

issue the warrant as herein referred to, this action was begun in the Superior Court of the County of San Joaquin, praying that a writ of mandate be issued by said court, directed to the respondent as the auditor of said county, to issue the warrant as requested by the appellant as and for her salary for said month of January, 1927, as clerk of the Justice's Court of the City of Stockton. The respondent appeared in this cause and filed a demurrer to the appellant's petition, which demurrer was sustained, and judgment thereafter entered in favor of the respondent denying the appellant any relief herein. From this judgment the plaintiff prosecutes this appeal.

Only one question is involved in this action, to wit: Is the salary of $1500 per year, to which the appellant is entitled, payable out of the county treasury of the county of San Joaquin? No question is presented as to whether appellant is entitled to any salary, nor is any issue tendered as to the amount thereof.

It appears from the record that the appellant was denied relief by reason of the wording of section 103½ of the Code of Civil Procedure, as said section read and was in force during the time involved in this proceeding. After providing for a clerk of the justice's court in cities of the 2¾ class, and fixing the salary at $1500 per annum, and also fixing the salaries of other clerks, the section concludes as follows: "Said salaries shall respectively be paid in equal monthly installments out of the treasury of said cities."

This section was re-enacted by the legislature in 1925 [Stats. 1925, p. 183], containing language which we have above set forth, after the decision of the Supreme Court in the case of *Graham* v. *Mayor of Fresno*, 151 Cal. 465 [91 Pac. 147], to which case reference will be hereafter made.

In 1923, section 103 of the Code of Civil Procedure was amended [Stats. 1923, p. 1011], in such a manner as to provide for the election of a justice of the peace in cities of the 2¾ class, which includes the city of Stockton. This section specifies the salary to be received by the justice of the peace of such court, and also provides for the payment of all fees collected by such justice, into the county treasury. No change was then made in the reading of section 103½ of the Code of Civil Procedure. Subsequently, in 1927, section 103½ of the Code of Civil Procedure was amended [Stats.

1927, p. 1657], relative to the payment of salaries, to read as follows: "Said salaries shall respectively be payable in monthly installments, by warrants drawn each month upon the salary fund, or if there be no salary fund, then upon the general fund of such city or county, as the case may be, such warrants to be audited and paid as any other city or county official's, respectively," etc.

In the case of *Graham* v. *Mayor of Fresno, supra,* the Supreme Court had before it the question as to whether the cost of maintaining a justice's court in and for cities having a police court created by charter, could be made chargeable against such cities. In that case it is held that section 8½ of article XI, giving to cities having a freehold charter the power to create police courts, vested in such city the exclusive right to create such police courts, and left to the legislature the power only of creating justices' courts, the expenses of maintaining which could not be made chargeable against the municipality in which such court was created. The language of the Supreme Court in this particular is as follows: "The effect of subdivision 1 of section 8½ of article XI was to make the matter of such police courts purely a municipal affair as to any freeholders' charter city which subsequently made appropriate provision in its charter for such court. It confided the subject matter of such courts, and the election and compensation of the judges thereof, to any such city desiring to assume, and assuming, control thereof, just as, by the same section, the matter of fixing the compensation of county officers in consolidated cities and counties was confided to the city and county, to be provided for in its freeholders' charter. Such jurisdiction could not coexist in both the legislature and the city, and the provision for the assumption of such jurisdiction by the city necessarily contemplated the removal of the same from the legislature whenever the jurisdiction was assumed by the city. Any act of the legislature relative to such subject matter would necessarily be inconsistent with a charter provision in regard to the same subject matter. As to such matters as the Constitution authorizes to be provided for in freeholders' charters, the provisions of the charter are supreme, superseding all laws inconsistent therewith (Const., Art. XI, sec. 6), and being exempt from any control by any subsequent act of the legislature."

The effect of this decision was to write out of section 103½ of the Code of Civil Procedure that portion which specified that the salary of the clerk of a city justice's court was payable out of the city treasury. Applied to the case at bar the effect of the decision was and is to write out of section 103½ of the Code of Civil Procedure the provision that the salary of the appellant is payable out of the city treasury. This leaves the section as though it simply read: The salary of the clerk of the Justic'e Court of the City of Stockton is the sum of $1500 per year, payable in equal monthly installments.

We have thus the simple proposition of the legislature creating a justice's court for the city of Stockton, providing for a clerk of said court at an annual salary of $1500 per year, payable in equal monthly installments, with all fees collected to be turned over to the county treasury. By reference to the sections of the code which we have mentioned it will be noticed that the clerk of the justice's court is empowered to perform a number of functions, such as the administration of oaths, the preparation of bonds, justification of bail, etc., which, under the decision of this court in the case of *Cunning* v. *Carr*, 69 Cal. App. 230 [230 Pac. 987], would constitute such person an officer and not a mere employee. It is further provided, in this section for the appointment of the clerk, that the appointment must be approved by the board of supervisors. In every particular except the actual naming of the payor, provision has been made for the salary of the appellant. Is the actual naming of the payor necessary to effectuate the intention of the legislature?

In the case of *Jenks* v. *City of Oakland*, 58 Cal. 576, we have a parallel situation, the only difference being that the case at bar is a county affair, whereas in the Jenks case it was a municipal question. Section 103 of the Code of Civil Procedure as enacted in 1880 (see Amendments to the Codes 1880, p. 34) read as follows, in so far as it is pertinent here: "In every city having 10,000 and not more than 20,000 inhabitants, there shall be one justice of the peace, and in every city having 20,000 and not more than 100,000 inhabitants, 2 justices of the peace, to be elected in like manner by the electors of such cities, respectively. . . . Every justice of the peace in any city having over 10,000

inhabitants shall receive an annual salary of $2,000 per annum, and shall be provided by the city authorities with a suitable office in which to hold his court. All fees which are by law chargeable for services rendered by such justice of the peace in the city's affairs shall be by them, respectively collected, and on the first Monday in each month, every such justice of the peace shall make report, under oath, to the city treasurer, of the amount of fees so by him collected, and pay the amount so reported into the city treasury to the credit of the general fund.''

The court in the Jenks case held that the city of Oakland was chargeable for the salary. We take the following from the opinion: ''It is objected that it is not provided in the statute that the salary is to be paid by the city of Oakland. It is not expressly so stated, but we are of the opinion that it was the intention of the legislature that the salary should be paid by the city. The intention is, in our judgment, clearly manifested by the requirements of the office that fees collected by the justice should be paid to the city treasury.''

As we have stated, the legislature, after the decision of the Supreme Court in the Graham case, re-enacted section 103½ of the Code of Civil Procedure without eliminating the provision naming cities as the payor of justices' clerks. However, the law is very well settled that when a section of the code or a statute has been judicially construed, and is again re-enacted, it will be considered that the legislature re-enacted the statute in view of the decision of the court, and as adopting the interpretation so given.

In 23 California Jurisprudence, page 723, we find the following: ''But where a statute has been judicially construed, a law subsequently enacted upon the same subject is to be considered in the light of the interpreting decisions. And if a statute is re-enacted in substantially the same language, the legislature is presumed to have adopted the construction given the prior law.'' Again, as set forth in the same volume in California Jurisprudence, page 791: ''The general rule is that provisions of the four codes must be construed with relation to each other, 'as though all such codes had been passed at the same moment of time and were parts of the same statute.' . . . All code sections relating to a particular subject are *in pari materia,* and should be read and considered together, or as a whole, or by the

light of each other, if the language of any one section or part of the law is such as to render the legislative intent uncertain.'' Thus, whatever is said in relation to justices' courts, the establishment of the same, the officering of the same, to whom the fees collected shall be paid, are all to be taken into consideration in determining the intent of the legislature as upon what particular treasury warrants shall be drawn for the payment of salaries. Also, what we have here quoted is applicable to sections of the Political Code hereafter to be mentioned. The justice's court in this case is not a municipal office. It does not exist under any of the provisions of the charter of the city of Stockton. The clerk, as an officer of that court, does not occupy such office by virtue of any charter provision. The creation, the existence and the duties of the justice's court of the city of Stockton and of the clerk thereof depend wholly and exclusively upon the act of the legislature. The salaries are fixed by the legislature. The office and all the duties connected therewith are a part and parcel of the county government of the county of San Joaquin, and not of the city of Stockton. (See *People* v. *Cobb,* 133 Cal. 74 [65 Pac. 325, 326].) In that case we find the following language: ''It may be admitted that city justices of the peace do not come, or at least do not altogether come within the category of county or township officers, but it is equally clear that they do not altogether come within that of city officers. . . . More accurately speaking, they, as well as county justices, form a part of the judicial system of the state; and both come equally within the provisions of section 11, article VI of the Constitution, which authorizes the legislature to 'determine the number of justices of the peace to be elected in townships, incorporated cities and towns,' '' etc. It is further said, however, that: ''It does not follow from the peculiar nature of their offices, that justices of the peace or other judicial officers do not constitute part of the county or city governments.'' (See 21 Cal. Jur., p. 830.)

With reference to the construction of the code under consideration, respondent calls our attention to section 1858 of the Code of Civil Procedure, which reads: ''In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been

omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.''

The argument based upon this section, however, overlooks the fact that everything in substance relative to the salary of the appellant is contained in the code provisions which we have cited, when read in connection with the decisions of the Supreme Court. The substance is the creation of the office, the fixing of the duties of the officer and the naming of the salary. The payor is incidental. The duties are all performed in this case for the benefit of the county of San Joaquin. The fact that the city of Stockton is a portion of the county of San Joaquin or even may possibly contain considerably more than half of the population of the county of San Joaquin does not change the fact that the services are all performed for the county of San Joaquin, and the county of San Joaquin receives all the benefits by reason of the due administration of its laws, and the receipt of fines and fees collected. We do not, by the construction given to the statute, write anything into it, or take out of it anything which the legislature had power to insert.

While not specially referred to herein, we find nothing in the cases cited by respondent limiting any of the foregoing statements contained in this opinion. Nor do we need to set forth at length herein any of the rules relative to the construction to be given to a statute, further than to state that if the intent of the legislature can be ascertained, it should be given effect. That it was the intent of the legislature that the appellant, as the clerk of the justice's court of the city of Stockton, should receive an annual salary of $1500 per year cannot be gainsaid, and that it was the intent of the legislature that the body politic, receiving all the benefits, should likewise bear the burdens, seems to us likewise clear. We think, also, that the following provisions of the Political Code are applicable. Section 4288 of the Political Code reads: ''The salaries of such officers named in this title, as are entitled to salaries, shall be paid monthly out of the county treasury,'' etc. Said section also provides that the county auditor shall draw his warrant for such salaries monthly. This section is found in title 2, article 58. The same title of the code in section 4014 of the Political Code provides for justices of the peace, constables and such subordinate officers as are provided by law.

That the clerk of the justice's court is a subordinate officer provided for by law appears from the code sections and decisions which we have considered herein.

The authority of the legislature having been exercised under the provisions of article XI of the Constitution in creating a justice's court for the city of Stockton, as a part of the county government of the county of San Joaquin and a part of the judicial system of the state, the salary of the appellant having been fixed, all the benefits from the creation of the office of which the appellant is a subordinate part, appearing to be for the benefit of the county of San Joaquin, we see no escape from the conclusion that the intent of the legislature, following the decisions which we have mentioned and the various provisions of the code which we have set forth, was and is that the county of San Joaquin is chargeable with the salary of the appellant. The writ of mandate should have been granted.

The judgment of the trial court is reversed, with directions to overrule the respondent's demurrer to appellant's petition.

Thompson (R. L.), J., and Finch, P. J., concurred.