[Civ. No. 13626. First Dist., Div. One. Nov. 4, 1947.]

IVAN L. SLAVICH et al., Petitioners, v. FRANCIS P. WALSH et al., Respondents.

John J. Dailey for Petitioners.

John J. O'Toole, City Attorney, and Norman Sanford Wolff, Deputy City Attorney, for Respondents.

PETERS, P. J.—The three petitioners, who are the clerk and two deputy clerks of the Municipal Court of San Francisco, on their own behalf and in behalf of some 83 other deputy clerks, seek by this proceeding in mandamus to compel respondents, the members of the Civil Service Commission of San Francisco and its secretary, to approve for transmittal to respondent controller the payrolls for the clerk and deputy clerks of the municipal court covering the period subsequent to the 18th of September, 1947. Such submission and approval are required under the provisions of the city charter before the controller may issue pay warrants.

The respondents' refusal to act is based on the fact that the proposed payrolls for the period subsequent to September 18, 1947, are predicated upon salaries fixed by the state Legislature in 1947 by statute, which salaries are in excess of

those fixed in the annual salary ordinance of the city. It is the contention of respondents that the attempt by the Legislature to fix these salaries by statute in 1947 was and is void.

At its 1947 session the Legislature enacted chapter 1113, Statutes of 1947, which added section 6a to the Municipal Court Act of 1925. (2 Deering's Gen. Laws, Act 5238.) That statute is entitled: "An act authorizing the establishment of municipal courts, prescribing their constitution, regulation, government, procedure and jurisdiction, and providing for the election and appointment of the judges, clerks and other attachés of such courts, their terms of office, qualification and compensation and for the selection of jurors therein." By that statute chartered cities with a designated population are permitted to create such courts under certain conditions. San Francisco availed itself of this permission in 1929, and the Municipal Court of the City and County of San Francisco was created in 1930. Prior to the legislative enactment of 1947, section 6 of the Municipal Court Act applicable to cities of the first class, that being the classification of San Francisco, prescribed the salaries to be paid the judges, the clerk and the jury commissioner. Prior to 1947, section 6 also provided that the clerk might appoint "such other deputies and attaches as may be provided for by the board of supervisors in the annual salary ordinance." As to the Los Angeles Municipal Court, sections 7, 7a, 7b and 7c of the Municipal Court Act for many years has fixed the salaries of the judges, clerk, marshal, referees, deputy clerks, assistant and deputy marshals and commissioners. In 1947, by chapter 1113, the state Legislature provided that the clerk might appoint some 85 deputy clerks, specifying in some instances the particular duties to be performed by certain of these deputies, and fixing the pay rates for the clerk and all of his deputies.

Prior to the enactment of chapter 1113, the respondent commission, acting pursuant to the quoted portion of section 6 which was superseded by chapter 1113, submitted to the board of supervisors a proposed salary ordinance for the fiscal year 1947-1948 which included salary rates for all positions paid out of city and county funds, including the clerk and deputy clerks of the municipal court. In all cases these proposed salaries were lower than those subsequently fixed by chapter 1113. The board of supervisors passed this ordinance and it became effective for the fiscal year in question. After the Legislature had passed, and the governor had signed, chapter 1113, but before it became effective, the **board**

of supervisors amended the appropriation ordinance to include the raises for these clerks as fixed by the state Legislature. Nevertheless, the secretary of the civil service commission has refused to approve the timerolls of the clerk and deputy clerks insofar as they are based on the state statute, and the controller refuses to draw a payroll or issue warrants based thereon.

An examination of the constitutional provision providing for the creation of municipal courts (art. VI, § 11, as amended in 1924), of the Municipal Court Act, and of the cases interpreting them, demonstrates to a certainty that the state Legislature has the power to fix the salaries of all officers and attachés of all municipal courts of the type provided in article VI, section 11, and that where the state has acted, the governing body of the city or city and county has no power at all over such salaries. It should be here mentioned that attached to the present petition are two opinions of the attorney general, two of the legislative counsel and two of the San Francisco city attorney (the latter now opposing the granting of the writ), all concluding that the state's power is paramount over the salaries of the clerk and deputy clerks of the Municipal Court of San Francisco.

There is not here involved the proper interpretation of the so-called "home rule" provisions of the Constitution. While it is true that article XI, section 7½, of the Constitution refers to the power of a chartered city over "inferior" courts, and that section 8½ of article XI, refers to the power of a chartered city over "municipal" courts, it is settled that neither section applies to the "municipal courts" provided for by article VI, section 11. (*Kenyon* v. *Johnson*, 97 Cal. App. 552 [276 P. 110]; *Simpson* v. *Payne*, 79 Cal.App. 780 [251 P. 324]; see discussion 6 Cal.Jur. 10-Yr.Supp. p. 732 et seq.) The courts referred to in article VI, section 11, are courts of record inferior to the superior courts but superior to the "inferior" or "municipal" courts referred to in sections 7½ and 8½ of article XI.

Article VI, section 11, provides for the establishment of municipal courts in chartered cities having a population of 40,000 or more, provides how such courts might be created in such cities, and then provides: "The legislature shall provide by general law for the constitution, regulation, government and procedure of municipal courts. . . . The manner in which, the time at which, the term for which the judges, clerks and other attachés of municipal courts shall be elected

or appointed, the number and qualifications of said judges and of the clerks and other attachés, except as such matters are otherwise provided in this article, shall be prescribed by the legislature. The compensation of the justices or judges of all courts of record, shall be fixed and the payment thereof prescribed by the legislature.''

█ Under this section it is quite apparent that, except for the sole question as to whether a municipal court shall exist in the municipality, the complete control over municipal courts is placed by the Constitution in the Legislature and not in the city or city and county. The available case law clearly so holds. In *Simpson* v. *Payne,* 79 Cal.App. 780 [251 P. 324], a clerk of the Municipal Court of Los Angeles brought mandamus to compel the county to issue a warrant on the basis of section 7 of the Municipal Court Act fixing his salary. The county maintained that he was only entitled to a lesser salary as fixed by the board of supervisors. The court pointedly held that the Legislature and not the chartered municipality had the constitutional power to fix the salaries to be paid clerks and attachés of the municipal court.

In *Chambers* v. *Terry,* 40 Cal.App.2d 153 [104 P.2d 663], the court considered the extent of the control of the Legislature over municipal courts. At page 158 it is stated:

"In this regard, we adopt portions of the opinion filed by the five judges of the trial court, which are as follows:

" 'It is still our view that the Constitution of municipal courts from every viewpoint, except only that of the bare question whether they shall exist at all or not in [a] given locality, is a state, rather than a municipal affair. This seems to us necessarily to follow from the requirement of section 11 of article VI of the State Constitution that ''the legislature shall provide by general law for the constitution, regulation, government and procedure of municipal courts and for the jurisdiction thereof except in particulars otherwise specified in this section, and for the establishment of municipal courts in cities or cities and counties governed under charters framed and adopted under the authority of this Constitution and having the population ·hereinbefore in this section specified,'' i. e., more than 40,000 inhabitants. The only ''particulars otherwise specified'' in section 11, that is particulars in which the subjects mentioned are excepted from the requirement that they be governed by ''general law'' have to do with the right of the voters of the municipality to decide

whether they wish such courts or do not wish them. They can, if they choose, have courts of the sort prescribed by general law under authority of article VI of the Constitution. But they must choose whether they want those courts or do not want them. They must either take them as the general law constitutes them or not take them at all. The circumstance that such courts are not in their functions or jurisdiction treated as falling within the category of municipal affairs is patent. . . .' ''

The Supreme Court in *Wilson* v. *Walters*, 19 Cal.2d 111, 119 [119 P.2d 340], has the following to say on this subject: ''It has been declared that the constitution of municipal courts from every viewpoint, except only that of the bare question of whether there shall or shall not be one in any given locality, is a state rather than a municipal affair.''

█ While it is true that article VI, section 11, does not expressly provide that the Legislature shall fix the compensation of clerks and deputy clerks, it does provide that the Legislature shall prescribe for the ''constitution, regulation, government and procedure'' of such courts. By such language the Constitution has provided that the entire municipal court setup, including salaries of attachés, is to be controlled by general state law. █ It may be that by general state law the Legislature may delegate a portion of this power to local bodies, as it did by old section 6 of the Municipal Court Act in reference to deputy clerks, but it is quite clear that upon the passage of a general law on the same subject the delegated authority to the local body terminates.

These conclusions are not seriously attacked by respondents. They do, however, make several contentions that require further comment. They first point out that section 11 of article VI expressly confers on the Legislature the power to fix the compensation of municipal judges, and of other justices and judges of courts of record. They interpret that provision as being a grant of power to the Legislature to fix only the salaries of the judges, and by implication a denial of the power to fix any other salaries. To state the proposition is to refute it. The power to fix the salaries of the attachés springs from that portion of article VI, section 11, conferring on the Legislature the power to provide for the ''constitution, regulation, government and procedure'' of the municipal courts. That was the express holding of the Simpson case, *supra*. █ It is, of course, elementary law

that, unlike the federal Constitution, the state Constitution is not a grant of power to the Legislature but rather a limitation upon the powers of that body. ■ An express enumeration of legislative powers is not exclusive of others not named, unless accompanied by negative terms. (See cases collected 5 Cal.Jur., p. 666, et seq., § 87, et seq.) There is nothing in section 11 of article VI to negate the Legislature's power to fix the salaries of attachés, in fact, the blanket authority granted includes that power. ■ The proper interpretation of the clause of article VI, section 11, conferring the power on the Legislature to fix the judges' salaries is that by that clause the Legislature itself must fix the salaries, while as to other matters relating to the "constitution, regulation, government" etc., of the municipal courts it is implied that the Legislature can delegate to the respective municipalities control over certain phases of such regulation, including the fixing of attachés' salaries as long as such delegation is effected by the "general law."

Respondents next point out that from 1929 to 1947, the Legislature has consistently recognized the power of the local board of supervisors to fix the salaries of some of the attachés of the San Francisco Municipal Court under section 6 of the Municipal Court Act. It is urged that this constituted some sort of a waiver and a recognition that such employees were municipal employees subject to municipal control. ■ The argument overlooks the fact that San Francisco has been permitted to fix the salaries in question not by reason of any charter provision, but solely by virtue of the provisions of section 6 of the state act, repealed in 1947, conferring that power on the municipality. ■ The question is not what the state Legislature has heretofore done in delegating this authority to the city, but whether the Legislature has constitutional power to withdraw a delegation of power once granted. Respondents' argument amounts to the contention that, although the Constitution confers the power to fix the salaries of attachés on the state Legislature, if the state Legislature once delegates that power, such delegation is irrevocable. ■ It needs no citation of authority to establish the principle that the Legislature may not thus divest itself of its constitutionally granted powers.

The principal argument of respondents is that the 1947 legislation itself recognizes that these employees, except as to salaries, are "municipal employees" and it is contended that

such recognition compels the conclusion that all matters relating to such employees, including salaries, are within the sole control of the chartered municipality. The statute involved—Statutes of 1947, chapter 1113—first provides that the judges shall appoint a clerk and then the statute fixes his salary. It is then provided that the clerk shall appoint various deputies and attachés, and in some cases defines their duties, and then the statute fixes their salaries. It is then provided that the appointing power, when vacancies occur, shall secure from the civil service commission of cities of the first class (San Francisco) the name of the highest person on the list of eligibles for such position, and that all such positions shall be promotive. It is next provided that ''All attachés [of the municipal court] heretofore or hereafter appointed . . . shall be entitled to the benefits of the civil service provisions of the charter . . . and said attachés shall be entitled to and shall be subject to any retirement and health service provisions in the charter . . . to the same extent and in the same manner as heretofore provided for said attachés of the said municipal court and in accordance with any changes hereafter made in said charter provisions affecting employees'' of the city. It is argued that these provisions recognize that these employees are municipal employees and it is argued once that is recognized, since San Francisco is a chartered city, it must have complete control over such employees, including the power to fix their salaries and prescribe their duties. It is argued that, if the salary provisions of chapter 1113 are inconsistent with the provisions just quoted, the latter must control under the claimed rule of construction that provisions appearing later in a statute control preceding provisions. Respondents point out that under the city charter only municipal employees are entitled to civil service, health and retirement benefits. They also point out that by section 22 of the Municipal Court Act all salaries of the judges and attachés of the court are paid by the county, and contend that that also indicates the local nature of their employment.

These arguments are all unsound. ▪ There can be no doubt that these employees are municipal employees, but they are municipal employees of a hybrid nature. By constitutional provision the state Legislature is the body that is given the power to regulate such employees, including the power to fix their salaries. But in many other respects they are municipal employees. Thus, it was held in the *County of Los Angeles* v. *Industrial Acc. Com.*, 123 Cal.App. 12 [11 P.2d 434], that

an attaché of the Municipal Court of Los Angeles was an employee of the city so far as the compensation act is concerned. It is quite apparent that such attachés are municipal employees, but unlike other municipal employees, they are subject to the control of the state Legislature operating under the constitutional power contained in article VI, section 11. If that is inconsistent with the powers of chartered cities contained in sections 7½ and 8½ of article XI, the provisions of section 11 of article VI, being later in time, must control. The employees are municipal employees, but the Legislature, by the express terms of article VI, section 11, is granted the power to determine when, how, and under what conditions such employees are to be taken into the employ of the municipality. ▮▮▮ Whatever authority the city may have over such employees is inferior and subordinate to that of the Legislature under its constitutional powers. The Legislature has seen fit to fix the number, salaries, and in some cases to fix the duties, of such employees. Where it has acted its powers are supreme. But as to other matters—civil service, health and retirement—the Legislature has seen fit to delegate power to the municipality under general law. There is no irreconcilable conflict between these two positions. The Legislature has simply seen fit to exercise its constitutional powers by specifically providing for salaries, while in these other respects it has seen fit to exercise its powers by delegating power to the municipality. This it had constitutional power to do.

None of the other arguments made requires discussion. It is quite apparent that petitioners are entitled to have their salaries paid in accordance with the state law. Let a peremptory writ of mandate issue ordering respondents to approve the payrolls as submitted and to issue pay warrants accordingly.

Ward, J., and Bray, J., concurred.

A petition for a rehearing was denied December 4, 1947, and respondents' petition for a hearing by the Supreme Court was denied December 22, 1947. Edmonds, J., and Carter, J., voted for a hearing.