[Civ. No. 26358. First Dist., Div. One. June 17, 1970.]

ERVIN R. MARTIN et al., Plaintiffs and Respondents, v.
COUNTY OF CONTRA COSTA et al., Defendants and Appellants.

## COUNSEL

John A. Nejedly, District Attorney, and Saul Fishman, Deputy District Attorney, for Defendants and Appellants.

Condon, Dolgin, Kully & Jameson and Howard Jameson for Plaintiffs and Respondents.

## OPINION

SIMS, J.—Defendants, the County of Contra Costa and the members of its board of supervisors, have appealed from a judgment directing the issuance of peremptory writ of mandate commanding them to compensate and provide benefits for the plaintiffs, six employees of the Municipal Court of the Richmond Judicial District, equal to and with the same effective date as other county employees, and awarding each of the plaintiffs, as against the county, a sum equal to $10 per month as a uniform allowance for each month he was employed during the period between September 8, 1966 and November 2, 1967.

The controversy stems from provisions found in the statute governing municipal courts in Contra Costa County. (Gov. Code, tit. 8, ch. 10, art. 2, §§ 73340-73362.) Section 73349 provides in part, "Except as otherwise provided in this article, all employments of any municipal court and marshal's office now established or which may be established in Contra Costa County shall be compensated and receive other benefits in accordance with the provisions of the salary ordinance of the county governing other county employments. *Any subsequent change in benefits provided by the salary ordinance to employees of the county shall apply equally to employees of the municipal courts and marshals' offices, and shall have the same effective date.* These benefits may also be retroactively applied. . . ." (Italics added.)[1]

---

[1]The first paragraph of section 73349 continues as follows: "References hereafter to range allocation and salary steps apply to the basic salary schedule set forth in Section 73351."

Section 73351 sets forth a salary schedule with range allocations numbered from 20 through 74 and five salary steps in each range. It recites, "The above salary schedule is the same schedule utilized for employees of Contra Costa County.

[¶] Should the board of supervisors adopt a revised salary schedule for county employees the new schedule shall apply equally to municipal courts and marshals' offices and conversion to the new schedule shall be effected for employees of the municipal courts or marshals' offices in the same manner and on the same date as for county employees, but all such adjustments shall be effective only until the 61st day after adjournment of the next regular session of the Legislature."

The statute embodied in that article of the Government Code contains a compre-

On August 9, 1966 the board of supervisors amended the county salary ordinance, effective September 8, 1966, by adding the following provision: "Public safety employees in permanent positions in the office of the County Sheriff and the County Fire Protection Districts, and also personnel in permanent positions in the Animal Control Division of the County Department of Agriculture who are required to wear uniforms, who comply with uniform requirements of the appointing authority shall receive a uniform allowance of $10.00 per month." Subsequently, on April 25, 1967, effective May 25, 1967, public safety employees in the office of County Service Area P-1 were brought within the scope of that provision. Thereafter, on October 3, 1967, effective November 2, 1967, the ordinance was again amended to include employees in "the offices of the Marshals of the Municipal Courts."[2]

The court found that all of the plaintiffs were employees of the county. (See *Villanazul* v. *City of Los Angeles* (1951) 37 Cal.2d 718, 724-726 [235 P.2d 16].) Four held the position of deputy marshal of the Municipal Court of the Richmond Judicial District during all of the period between the effective date of the first amendment to the salary ordinance and the

hensive plan governing the organization of municipal courts within Contra Costa County. It specifies the number of judges for each municipal court district within the county (§ 73341); it enumerates the positions into which the employees of the court shall be classified (§ 73350), and relates each to a range in the salary schedule (§ 73351.1); it prescribes and authorizes the number of positions to be filled (in some cases subject to the approval of the board of supervisors, § 73360.1) in relation to the number of judges authorized in each judicial district (§§ 73355-73360), and provides for the manner of their appointment (§§ 73353-73354) from existing personnel (§ 73362), through civil service (§ 73348), and in emergencies (§ 73361). It also includes provisions governing the appointment and compensation of court reporters (§§ 73342-73346), and additional filing fees apparently authorized to fund the reporter's salaries.

Section 73352 appears to supplement and make more certain the relationship between section 73349, section 73351 and section 73351.1. It provides in part, "Certain classifications in the municipal courts and marshals' offices are deemed to be equivalent in job and salary level to certain classifications in the service of Contra Costa County and whenever the salary of a classification in the service of Contra Costa County is adjusted by the board of supervisors, the salary of the comparable classification in the municipal courts or marshals' offices shall be adjusted a commensurate number of ranges on the salary schedule." [There follows precise instructions concerning the adjustment of the enacted relationship between classified positions in the municipal court and the salary ranges prescribed for those positions, in the event certain equivalent county positions are adjusted.]

[2]The section as then amended reads: "Public safety employees in permanent positions in the office of the County Sheriff, the offices of the Marshals of the Municipal Courts, the County Fire Protection Districts, County Service Area P-1, and personnel in permanent positions in the Animal Control Division of the County Department of Agriculture, who comply with uniform requirements of the appointing authority, and Judicial District Constables who regularly wear a uniform and so advise the Auditor-Controller in writing, shall receive a uniform allowance of $10.00 per month."

effective date of the amendment which expressly referred to "the Marshals of the Municipal Courts." Another so served during a portion of that period, and the sixth held the position of deputy clerk of the same court during all of the period involved. The court further found that each was required as part of his employment to wear a designated uniform while on the job. Other findings and conclusions are referred to below.

The defendants contended below and reiterate before this court that the provision contained in the second sentence of Government Code section 73349, upon which plaintiffs rely, is unconstitutional; that in any event the failure to originally provide a uniform allowance for employees of the municipal court did not violate the provisions of section 73349; that the court may not order the board of supervisors to enact an ordinance; and that the courts should not interfere with the discretionary acts of public officers. It is concluded that the provisions of the Government Code are constitutional, and that the trial court properly construed them as giving the plaintiffs a right to a uniform allowance. Nevertheless, because the findings of fact and conclusions of law in their present form impinge upon the legislative power of the board of supervisors, the judgment must be reversed and the case must be remanded for further proceedings to grant appropriate relief.

*Constitutionality*

It is contended that the provisions of section 73349, upon which the plaintiffs rely, violate section 5 of article VI of the state Constitution because they improperly delegate to the board of supervisors powers which the Constitution vests in the Legislature. (See *Coulter* v. *Pool* (1921) 187 Cal. 181, 190 [201 P. 120].) ■ Section 5 provides in part, "The Legislature shall *provide* for the organization and *prescribe* the jurisdiction of municipal and justice courts. It shall *prescribe* for each municipal court and *provide* for each justice court the number, qualifications, and compensations of judges, officers, and employees."[3] (Italics added.)

---

[3]The present provisions were adopted November 8, 1966, after the enactment of section 73349 (Stats. 1961, ch. 1992, § 1, p. 4190 as amended by Stats. 1963, ch. 2143, § 2, p. 4468), and after the enactment and effective date of the first amendment to the salary ordinance. Similar language was found in former section 11 of article VI as adopted November 7, 1950. It provided in part, "The Legislature shall provide by general law for the regulation, government, procedure and jurisdiction of municipal courts and of justice courts, and shall fix by law the powers, duties and responsibilities of such courts and of the judges thereof. [¶] Except as such matters are otherwise provided in this article, the Legislature shall *prescribe* the manner in which, the time at which, and the terms for which the judges, officers and attaches of municipal courts and of justice courts shall be elected or appointed, the number, qualifications and

Defendants stress the distinction between the constitutional mandate to *prescribe* for each municipal court, as embodied in section 72000 of the Government Code,[4] and the mandate to *provide* for justice courts, which has been accomplished by delegating matters to the board of supervisors as set forth in section 71600.[5] "The purpose of the above portion of Article VI, section 11, was to leave the 'details of court structure . . . to the Legislature . . . .' (Twelfth Biennial Report, Judicial Council of California, pp. 19, 41-43.)" (*Valentine* v. *County of Contra Costa* (1961) 188 Cal.App.2d 515, 521 [10 Cal.Rptr. 500]. See also *Slavich* v. *Walsh* (1947) 82 Cal.App.2d 228, 232-234 [186 P.2d 35] construing earlier constitutional provisions.)

The provisions of the Government Code (see fn. 1 above) expressly embody and prescribe the rates of pay for employees of the municipal court. Since the county rates of pay are expressly set forth in state law the constitutionality of the first sentence of section 73349 is not directly at issue. █ The question here is whether the Legislature may *prescribe* or *provide* that "Any subsequent change in benefits provided by the salary ordinance to employees of the county shall apply equally to employees of the municipal courts and marshals' offices, and shall have the same effective date."

This provision is not an abdication of the Legislature's duty to prescribe the compensation of the attaches of each municipal court. It fixes the compensation of the employees, declares a policy that such compensation shall be commensurate with that furnished county employees with equivalent responsibilities and provides for interim changes, subject to review by the Legislature, in the event there are local changes which would otherwise cause discrepancies in compensation in violation of the legislative policy.

In *Kugler* v. *Yocum* (1968) 69 Cal.2d 371 [71 Cal.Rptr. 687, 445 P.2d 303], a city ordinance provided that in setting the salaries of firemen, the council could not fix them at an amount less than the average of the salaries received by the firemen of a neighboring metropolis and the salaries re-

---

compensation of the judges, officers and attaches of municipal courts, and *provide* for the manner in which the number, qualifications and compensation of the judges, officers and attaches of justice courts shall be fixed." (Italics added.)

[4]Section 72000 reads: "The Legislature shall prescribe the number and compensation of judges, officers, and attaches of each municipal court.".

[5]Section 71600 provides in part, "The board of supervisors shall regulate the compensation of the judges and constables of justice courts, and prescribe the number, qualifications, and compensation of such clerks, deputies, and other attaches of justice courts as public convenience requires, notwithstanding the provisions of any charter. . . ."

ceived by the firemen of the county in which the city lay. The court rejected the contention that the ordinance created an unlawful delegation of the city's legislative power, and stated: "Alhambra's formula for salary adjustments based upon the Los Angeles rates does not differ from other formulae, recognized as lawful, that tie adjustments in compensation for employees into future events which do not lie within the power or control of the legislative body. The elemental illustration of such a formula is that which relates a wage adjustment to future dates or time periods for periodic adjustments. Moreover, adjustment may be linked to the cost of living, to average earnings or prevailing wages of a comparable occupation, to prevailing wages or average earnings generally, or to any number of such desiderata. The fact that the formula operates upon eventualities which may lie outside the control of the legislative body and within the control of other persons does not convert the legislative action into an unlawful delegation." (69 Cal.2d at p. 377, fn. omitted.)

In *Slavich* v. *Walsh, supra,* 82 Cal.App.2d 228, the court upheld the paramount right of the Legislature to fix the salaries of all officers and attaches of all municipal courts under the provisions of section 11 of article VI of the state Constitution as they were amended in 1924. The court stated, "Whatever authority the city may have over such employees is inferior and subordinate to that of the Legislature under its constitutional powers. The Legislature has seen fit to fix the number, salaries, and in some cases to fix the duties, of such employees. Where it has acted its powers are supreme. But as to other matters—civil service, health and retirement—the Legislature has seen fit to delegate power to the municipality under general law. There is no irreconcilable conflict between these two positions. The Legislature has simply seen fit to exercise its constitutional powers by specifically providing for salaries, while in these other respects it has seen fit to exercise its powers by delegating power to the municipality. This it had constitutional power to do." (82 Cal.App.2d at p. 237).

In *Kugler* v. *Yocum, supra,* the court noted, "The proposed Alhambra ordinance contains built-in and automatic protections that serve as safeguards against exploitive consequences from the operation of the proposed ordinance. Los Angeles is no more anxious to pay its firemen exhorbitant compensation than is Alhambra. Los Angeles as an employer will be motivated to avoid the incurrence of an excessive wage scale; the interplay of competitive economic forces and bargaining power will tend to settle the wages at a realistic level." (69 Cal.2d at p. 382.) So here the policy enunciated by the Legislature is particularly fitting because if county wages are fixed at a realistic level, those employees whose wages are fixed by the Legislature should enjoy comparable wages for equivalent work.

The county taxpayers who bear the burden of the salaries fixed by the Legislature cannot complain that they are unjustly burdened by the application of the state prescribed formula.

It is concluded that the provisions of section 73349 are constitutional.

*Statutory Construction*

The defendants contend that in any event the uniform allowance, which was originally granted only to public safety employees in the office of the county sheriff and the county fire protection districts and to personnel in the animal control division of the county department of agriculture, was not such a "subsequent change in benefits provided by the salary ordinance to employees of the county" as is embraced in the provisions of section 73349. They assert, with some logic, that the benefits referred to are those which may be granted to all employees of the county, such as vacation, sick leave and overtime, and that where benefits are granted to a particular class of county employees such benefits do not apply to the employees of any municipal court or marshals' office without express mention.

The trial court found, "Pursuant to Section 73349 of California Government Code petitioners were and are entitled to the same compensation and benefits given to other county employees in Section 2441 of the Ordinance Code of Contra Costa County as adopted on or about August 9, 1966." This finding receives some support from the provisions of section 73352 which expressly deals with the question of adjustments in salary ranges of employees of the municipal courts and marshals' offices in the event of a change in the county's classification of ranges (see fn. 1 above). The section states in part, "(c) The class of deputy marshal I is equivalent in job and salary level to the class of deputy sheriff in the service of Contra Costa County. The classes of deputy marshal II and marshal I and II shall be adjusted a commensurate number of ranges on the salary schedule as the class of deputy marshal I above is adjusted." This is a clear manifestation of the legislative intent to link the compensation of marshals and deputy marshals with the compensation of deputy sheriffs. It is concluded, therefore, that the court properly concluded that the employees of the marshals' office were entitled to the same uniform allowance as was granted to deputy sheriffs by the first amendment to the salary ordinance.

The foregoing ratiocination does not expressly cover the case of plaintiff-deputy clerk. By section 73352 deputy clerks' salaries are made equivalent to and related to the county classification of typist-clerk. Nevertheless, it is acknowledged that she was a clerk in the municipal court and was required to wear a marshal's uniform while on duty. On remand

the court should determine whether the language "public safety employees in permanent positions in the Office of the County Sheriff who are required to wear uniforms" included uniformed clerk-typists employed in that office. If so, she should be similarly entitled to the uniform allowance.

*Remedy*

■ The prayer of the petition, in addition to claiming damages, requested an alternative writ and a peremptory writ "commanding respondents to enact a county ordinance which compensates and provides benefits for petitioners equal to other county employees and that has the same effective date as applied to other county employees."

The trial court found that the August 1966 amendment did not grant the plaintiffs a uniform allowance; that the October 1967 amendment did give the plaintiffs the same uniform allowance benefit that had been given to county employees by the earlier amendment; and that the later amendment failed to give the benefit to plaintiffs the same effective date as that benefit which was granted to county employees. It further found as follows: "Respondent county and its Board of Supervisors have the duty to enact ordinances which compensate county employees in accordance with Section 73349 of the Government Code." The conclusions of law and judgment recited that "a peremptory writ of mandate issue commanding respondent to compensate and provide benefits for petitioners equal to and with the same effective date as other county employees."

The original prayer and the foregoing findings and conclusions are inconsistent with the theory and finding, approved above, that the plaintiffs automatically became entitled to the benefits, when they were enacted for equivalent employees by the county, by virtue of the provisions enacted into the Government Code by the state Legislature. They also offend the general principle that the courts have no power to compel the performance of a legislative act. (See *Johanson* v. *City Council of Santa Cruz* (1963) 222 Cal.App.2d 68, 72 [34 Cal.Rptr. 798]; and *Tandy* v. *City of Oakland* (1962) 208 Cal.App.2d 609, 611 [25 Cal.Rptr. 429].)

The plaintiffs rely upon *Tevis* v. *City & County of San Francisco* (1954) 43 Cal.2d 190 [272 P.2d 757], as authorizing the relief which was granted. Examination of that case indicates that it does authorize the use of a writ of mandate, as distinguished from an ordinary action at law for breach of contract, under the following circumstances: "In a few situations involving claims by state or municipal employees for wages the general rule has been relaxed. For the most part, these cases concern disputes as to the proper construction of a statute or ordinance defining or giving rise to the exercise of official duty, and, although recognizing that the ultimate

effect of a decision may be to adjudicate a money claim, they emphasize the necessity of official cooperation and the ministerial nature of the official acts involved. [Citations.]" (43 Cal.2d at p. 198.) The writ issues, however, not against the legislative body, but against the ministerial officers who are responsible for the administrative steps through which the compensation is ultimately paid. (See *id.,* at p. 199; and *Slavich* v. *Walsh, supra,* 82 Cal.App.2d 228, 237; *Kenyon* v. *Johnson* (1929) 97 Cal.App. 552, 558 [276 P. 110]; *Simpson* v. *Payne* (1926) 79 Cal.App. 780, 786 [251 P. 324]; and 41 Cal.Jur.2d, Public Officers, § 189, pp. 76-78.)

■ The award of damages cannot stand alone because there was no allegation or finding that the plaintiffs complied with any claim statute. (Cf. *Tevis* v. *City & County of San Francisco, supra,* 43 Cal.2d at p. 199.) The court did find, however, as follows: "Each petitioner made his or her demand on respondent county and its Board of Supervisors to comply with their duty to give the subsequent changes in benefits provided by salary ordinances to employees of the said county, equal application and the same date, to employees of the municipal court and marshal's office of the said Richmond Judicial District."

■ The only defect in the proceedings and judgment is the failure to join the proper ministerial officers of the county government. Plaintiffs should be permitted to join the proper parties and to proceed in the manner suggested in the foregoing precedents. Since the county is the real party in interest and has been represented throughout, those ministerial officers should not be permitted to assert any laches or limitations upon being joined, but should be bound by the findings made against the county and its board of supervisors which have been approved in this opinion.

The judgment is reversed and the cause remanded for further proceedings against the appropriate county officers in conformance with the views expressed in this opinion. Let each side bear its own costs on appeal.

Molinari, P. J., and Elkington, J., concurred.