[Civ. No. 2202. Fifth Dist. May 31, 1974.]

COUNTY OF MADERA, Petitioner, v.
THE SUPERIOR COURT OF MADERA COUNTY, Respondent;
ALEC BROWN, Real Party in Interest.

**COUNSEL**

Roy E. Wolfe, County Counsel, and Donald K. Marshall, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Herbert E. Bartow for Real Party in Interest.

**OPINION**

**BROWN (G. A.), P. J.**—This cause is before us on an order to show cause issued by this court upon a petition for writ of mandate filed by the County of Madera praying that we compel the Superior Court of Madera County to declare Madera County Ordinance No. 371, adopted pursuant to Government Code[1] section 71040,[2] a valid enactment. We entertained

---

[1]All references hereinafter to code sections will be to the Government Code unless otherwise indicated.

[2]Government Code section 71040 provides: "As public convenience requires, the board of supervisors shall divide the county into judicial districts for the purpose of electing judges and other officers of municipal and justice courts, and may change district boundaries and create other districts. No city or city and county shall be divided so as to lie within more than one district."

the writ because of the significant public importance of the issues involved. (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 674-675 [94 Cal.Rptr. 279, 483 P.2d 1231]; *County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593].)

Before this original proceeding was commenced in this court, the county and the real party in interest, Alec Brown, who is a justice of the peace in one of the eliminated judicial districts hereinafter referred to, sought and obtained a declaratory judgment in respondent superior court. In that proceeding the superior court in substance decided that Ordinance No. 371: (1) consolidated the Madera Judicial District and Sierra Judicial District and purported to create a new judicial district; (2) prescribed that the new consolidated district have two judges. The respondent court then held that the part of the ordinance by which the board of supervisors purported to establish more than one judicial position in a judicial district is invalid as violative of article VI, section 5 of the California Constitution in conjunction with Government Code sections 71040, 71042 and 71600. And finally, the court determined that the valid provisions relating to consolidation of the two districts could not be severed from the invalid sections relating to the establishment of two judgeships, thereby rendering the entire ordinance invalid. For the reasons hereinafter stated, we agree with the decision of the trial court.

■ At the threshold, it will be helpful to delineate several cardinal principles of statutory construction and note that the rules applying to the construction of statutes apply equally to ordinances. (*Welshans* v. *City of Santa Barbara* (1962) 205 Cal.App.2d 304, 308 [23 Cal.Rptr. 108].)

■ The proper interpretation of statutory language is a question of law for the court and we are not constricted in this regard by the conclusions of the trial court. (Evid. Code, § 310; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839] (cert. den., 365 U.S. 823 [5 L.Ed.2d 700, 81 S.Ct. 708]).) ■ In construing the statutory language the primal principle of statutory construction requires the ascertainment of the intent of the legislative body (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]), this court having no power to rewrite an ordinance or statute so as to make it conform to a presumed intention which is not expressed. (*Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 365 [5 P.2d 882].) When, as here, there is no direct evidence of the legislative intent, the court turns first to the words of the enactment for the answer and may also rely upon extrinsic aids (*People*

v. *Knowles* (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1] (cert. den., 340 U.S. 879 [95 L.Ed. 639, 71 S.Ct. 117]); *In re Miller* (1947) 31 Cal.2d 191, 198-199 [187 P.2d 722]), including recitals and findings in the enactment. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal. 3d 247, 256 [104 Cal.Rptr. 761, 502 P.2d 1049].)

■ Turning to the applicable constitutional and statutory provisions, article VI, section 5 of the California Constitution provides: "Each county shall be divided into municipal court and justice court districts as provided by statute, but a city may not be divided into more than one district. Each municipal and justice court shall have one or more judges.

"There shall be a municipal court in each district of more than 40,000 residents and a justice court in each district of 40,000 residents or less. The number of residents shall be ascertained as provided by statute.

"The Legislature shall provide for the organization and prescribe the jurisdiction of municipal and justice courts. It shall prescribe for each municipal court and provide for each justice court the *number,* qualifications, and compensation of judges, officers, and employees." (Italics added.)

Under this constitutional provision, the Legislature is specifically given the power to "provide" (as distinguished from "prescribe") "for each justice court the number . . . of judges . . . ." Thus, although the county board of supervisors has authority to legislate with respect to local matters, the functioning of the courts is a statewide and not a local matter and this power is specifically granted to the Legislature. (See *Villanazul* v. *City of Los Angeles* (1951) 37 Cal.2d 718, 722 [235 P.2d 16]; *Martin* v. *County of Contra Costa* (1970) 8 Cal.App.3d 856, 862 [87 Cal.Rptr. 886]; *Slavich* v. *Walsh* (1947) 82 Cal.App.2d 228, 234 [186 P.2d 35].) Indeed it appears that in formulating the wording of article VI, section 5 (formerly art. VI, § 11), the Legislature was careful to reword that section so as to "clarify its authority over individual municipal and justice courts." (1967 Report to the Governor and the Legislature, Judicial Council of Cal., pp. 66, 72; see also 56 Ops.Cal.Atty.Gen. 315, 316 (1973); Opn. of Legislative Counsel, No. 2549, Feb. 17, 1966, published in Sen. J. (1966) pp. 1044-1046; *Martin* v. *County of Contra Costa, supra,* 8 Cal.App.3d 856, 861-862.)

Although the Legislature has the ultimate power to control the justice courts, article VI, section 5, *supra,* states that the Legislature "shall . . . *provide* for each justice court the number, qualifications, and compensation of judges, officers, and employees." (Italics added.) In wording this section, the Constitutional Revision Commission used the word "provide"

rather than "prescribe" to indicate an intention to permit the Legislature to delegate this duty.[3] Thus, it is clear that these duties may be delegated by the Legislature (see, e.g., *Simpson* v. *Hite* (1950) 36 Cal.2d 125, 129-130 [222 P.2d 225]; *Martin* v. *County of Contra Costa, supra,* 8 Cal. App.3d 856, 862; *Slavich* v. *Walsh, supra,* 82 Cal.App.2d 228, 234) and in fact the Legislature has seen fit to delegate some of these duties to the counties. Section 71600 states: "The board of supervisors shall regulate the compensation of the judges and constables of justice courts, and *prescribe the number*, qualifications, and compensation of such *clerks, deputies, and other attaches* of justice courts as public convenience requires, notwithstanding the provisions of any charter. In any chartered county all such matters shall be regulated in the manner, if any, set forth in the charter with respect to township officers and employees, but the board of supervisors may increase the salary of any constable or judge of a justice court to compensate for increase of duties or living costs, notwithstanding the provisions of any charter." (Italics added.)

Under this section, the Legislature has delegated to the counties the authority and duty to regulate the compensation of both judges and constables and has also given the power and duty to regulate the number, qualifications and compensation of "clerks, deputies, and other attaches." (See *McClung* v. *Johnson* (1930) 106 Cal.App. 264, 268 [289 P. 199].) Significantly absent from this delegation of authority, however, is any mention of delegating the power to regulate the number of judges. This obvious omission clearly suggests application of the familiar maxim of statutory construction that the expression of one thing in a statute implies the exclusion of the omitted thing. (See *In re Hubbard* (1964) 62 Cal.2d 119, 126-127 [41 Cal.Rptr. 393, 396 P.2d 809], disapproved on other grounds, *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 63 [81 Cal.Rptr. 465, 460 P.2d 137]; *Kirby* v. *Alcoholic Bev. etc. App. Bd.* (1969) 3 Cal. App.3d 209, 220-222 [83 Cal.Rptr. 89].) Under this principle, the delegation to the counties in section 71600, *supra,* of the authority to regulate the number of clerks, deputies, and other attachés, plus the express mention of the compensation of judges in the same section without any reference to their number, manifestly indicates the intention not to delegate the power to regulate the number of judges.

Additional support for this conclusion is found in section 71085 which,

---

[3]In its 1967 Report to the Governor and the Legislature, the Judicial Council noted that "[t]he Commission uniformly uses the word 'prescribe' when the intention is that the named authority must itself exercise the function described; in other words, it imposes a nondelegable duty. The more general term 'provide' is used when it is intended not to require action by the named authority itself; in other words, it permits the delegation of the function to others." (P. 67, fn. omitted.)

after providing for succession of employees of superseded courts upon consolidation, states that "The judge of an existing court who does not succeed to judicial office shall be deemed to be a clerk or chief clerical officer within the meaning of this section."

Also buttressing this construction is section 71080 (see fn. 6, *infra*) which states that, "If the number of eligible incumbent judges . . . exceeds the number of judicial offices provided by law for such municipal or justice court, such incumbents shall not automatically succeed to judicial positions in the municipal or justice court, *and the existing courts shall continue to function within the district* until the first judge or judges of such municipal or justice courts are elected by the qualified electors of the district . . . ."

It is thus concluded that although the Legislature has the authority to delegate to the county the power to determine the number of judges in each judicial district (Cal. Const., art. VI, § 5), it has not done so (§§ 71600, 71080, 71085), and in the absence of such delegation, the county has no power to alter the number of judges in a district, which number has historically, and formally by law, been set at one (see *Odell* v. *Rihn* (1912) 19 Cal.App. 713, 714 [127 P. 802]; former Cal. Const., art. VI, § 11; see also Opn. of Legislative Counsel, No. 2549, Feb. 17, 1966, published in Sen. J. (1966) pp. 1044-1046).[4] This conclusion is supported by both an opinion of the Attorney General (56 Ops.Cal.Atty.Gen. 315 (1973)) and an opinion of the Legislative Counsel (Opn. of Legislative Counsel, No. 9898, July 16, 1973).

[4]See also Fourteenth Biennial Report, Judicial Council of California, page 20, which states as follows: "DETERMINATION OF NUMBER OF JUDGES. The second important matter to be determined after approval of the reorganization by the voters was the number of judges required for the courts to be established. Obviously, that determination would also be a factor influencing the efficiency and economy of the new lower court system. [¶] The constitutional amendment requires that there be at least one judge for each municipal and justice court, with such additional judges as may be authorized. It specifically directs the Legislature to fix the number of judges of municipal courts and authorizes it to provide for the manner of fixing the number of justice court judges. By terms of the supplementary legislation enacted in 1949, subsequent or future action by the Legislature was contemplated to fix the number of judges for each municipal court." (Fn. omitted.)
This report was written with reference to former article VI, section 11 of the California Constitution, which clearly specified that there should be one judge in each municipal and justice court, with such additional judges as may be authorized by the Legislature. Although such specific language does not appear in the present language of article VI, section 5, it is apparent that in rewording this provision the drafters did not intend to effect any substantive changes but only intended to decrease the number of words in the section. (See 1967 Report to the Governor and the Legislature, Judicial Council of Cal., p. 66; 56 Ops.Cal.Atty.Gen. 315, 316 (1973).)

■ The county has urged that the invalid sections of the ordinance pertaining to the number of judges is severable from the valid parts pertaining to consolidation of the districts, it being unquestioned that the county had the authority to alter judicial boundaries and create new judicial districts. (§§ 71040, 71042.)

Whether invalid parts of an ordinance are severable from the remainder thereof so that the valid sections remain in effect depends upon the intention of the legislative body and whether severance would result in destroying the statutory scheme and the underlying purpose of the ordinance. (*Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860, 872 [94 Cal. Rptr. 777, 484 P.2d 945].)

A review of the findings and recitals of Ordinance No. 371 manifestly indicates that the intent and purpose of the board of supervisors in seeking to consolidate the two districts was to create two judgeships in one district and to equalize their workload, which purpose obviously would be defeated if consolidation resulted in an increased burden on the one judge in the new district, with a consequent magnification of the very condition the board was attempting to correct. The ordinance recites that (1) the Madera Judicial District has an annual caseload of 14,128, while the Sierra Judicial District has an annual caseload of 1,147; (2) "[t]he Judge of the Madera Judicial District has from time to time requested additional money for said court because of the burden of the case load and in connection therewith, within the past two years, judges from out-of-County have been imported to provide assistance during vacations, illness, or absence of the one judge now presiding in said Madera Judicial District"; (3) "[t]he calling upon judges from out of the County to sit in the Madera Judicial District often costs the County additional money with a greater burden upon the taxpayer"; (4) "[t]he judge presiding within said Sierra Judicial District *could share the case load* of the Madera Judicial District with effective economy, efficiency and judicial fairness, provided the Madera Judicial District and Sierra Judicial District were established as one district"; (5) "[t]he County and the taxpayer would realize economy *in the sharing of the case load,* the reduction of imported judges from out of county, and the reduction of the transportation of prisoners from the jail to the court in Oakhurst and return"; and (6) "[t]he establishing of a new judicial district . . . would be consistent with the statutory concept of the consolidation or enlargement of judicial districts and other alteration of district boundaries, with a view toward creating a greater number of full-time judicial offices, equalizing the work of the judges, expediting judicial business, and improving the administration of justice." (Italics added.)

Moreover, section 5 of the ordinance, which is relied on by the county, repeatedly uses the plural form in providing that (1) "the judges of the 'Madera Judicial District' and the 'Sierra Judicial District' shall become the judges of the [new district], until the election or appointment and qualification of their successors," and (2) "[t]he time for election and qualification of the successors of said judges shall be [as previously fixed for the election of the judge of the superseded district. . . ." (Italics added.)

We conclude that it is palpably evident from the foregoing that to validate the consolidation without validating the attempt to create two judgeships in the new district would frustrate and defeat the intent and purpose of the board of supervisors in enacting the ordinance. Accordingly, the entire ordinance must fall.

We have thus far assumed that Ordinance No. 371 provided for two judges. That was the position taken by the county in the respondent court proceeding, having alleged this construction of the ordinance in its complaint, admitted it in its answer to the cross-complaint, and argued it in its trial briefs.

Basing its argument on section 5[5] of Ordinance No. 371, the county has taken the position in this court that the ordinance does not establish two judgeships, but only provides that judges shall be as provided in Government Code section 71080.[6] The county argues that since section

---

[5]Section 5 of Madera County Ordinance No. 371 states: "Pursuant to Section 71080 of the Government Code, and after the effective date of this Ordinance, the judges of the 'Madera Judicial District' and the 'Sierra Judicial District' shall become the judges of the new 'Madera County Judicial District' as established in this Ordinance, until the election or appointment and qualification of their successors. The time for election and qualification of the successors of said judges shall be that previously fixed for the election and qualification of the judges for said 'Madera Judicial District' and the 'Sierra Judicial District' for the court and office superseded, had such courts not been superseded, but·in no event shall any such election of successors to be held within ten (10) months of succession to the office of the new court."

[6]Government Code section 71080 provides: "After January 1, 1952, upon the establishment of a municipal or justice court, the judges of existing courts inferior to the superior court in any city, township, or judicial subdivision situated wholly or partly in the district or city and county for which a municipal or justice court is established shall, if eligible, become the judges of such municipal or justice court until the election or appointment and qualification of their successors. The time for election and qualification of their successors shall be that previously fixed for the election and qualification of their successors for the court and office superseded, had such courts not been superseded, but in no event shall any such election of successors be held within 10 months of succession to the office of the new court. If the number of eligible incumbent judges who have not filed a written statement

5 of the ordinance refers to authority granted "Pursuant to Section 71080 of the Government Code . . ." and since that section nowhere refers to the number of judges to sit in the new consolidated district, the ordinance should be interpreted consistent with section 71080. ██ ██ Such an interpretation, the argument continues, means the two judges will continue in office until one of them is elected as the judge of the new district.[7] The argument is unpersuasive and the contention must be rejected.

First, section 71080 (see fn. 6), by its plain terms does not purport to establish the number of judgeships or create judicial positions but only speaks to the procedure for filling vacancies in positions otherwise legally created. Secondly, as we have heretofore pointed out in some detail, the findings and recitals and other provisions of the ordinance make abundantly clear that it was the intent of the board of supervisors to create two judgeships, leaving no plausible room for dispute in this regard. Lastly, it is noted that the contemporaneous construction of the ordinance at the incipient stages of this controversy by the county counsel, an officer who is presumably charged with enforcement of the ordinance, is entitled to considerable weight in arriving at the conclusion that it was the intent of the board of supervisors to create two judgeships. (*Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793].)

The petition for writ of mandate is denied, and the order to show cause is discharged.

Gargano, J., and Franson, J., concurred.

---

with the county clerk disclaiming their desire to succeed to office exceeds the number of judicial offices provided by law for such municipal or justice court, such incumbents shall not automatically succeed to judicial positions in the municipal or justice court, and the existing courts shall continue to function within the district until the first judge or judges of such municipal or justice courts are elected by the qualified electors of the district at the first general state election held following the expiration of 90 days and qualify."

[7] We decline to apply the doctrine of invited error to bar a consideration of this contention for two principal reasons. (1) This is not an appeal from the trial court judgment but an original proceeding in this court; and (2) the construction of the ordinance is a question of law (*Beck* v. *Piatt* (1972) 24 Cal.App.3d 611, 615 [101 Cal.Rptr. 236]), and a party can change his position in the appellate court where it involves only a question of law (*Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 499 [102 Cal.Rptr. 795, 498 P.2d 1043]).